CHARLES N. DIETZ v. CITY NATIONAL BANK OF HASTINGS, NEBRASKA.

FILED NOVEMBER 8, 1894. No. 5400.

1. **Principal and Agent:** UNAUTHORIZED INDORSEMENT OF NOTE. Where it was known to the president of a bank that the indorsement of the name of the payee on a note by one assuming to make such indorsement as the payee's agent, was outside the scope of his powers, such indorsement is not binding on the alleged principal.

2. ———: ———: RATIFICATION. To the ratification of an unauthorized indorsement of his name, knowledge of the act to be ratified must be shown to have been had by the party sought to be charged by the alleged ratification.

3. **Pleading:** AMENDMENT AFTER VERDICT. It is error to permit after verdict an amendment of the petition so as to substantially change the claim made up to that time, especially when such change is not to conform such petition to the facts proved.

ERROR from the district court of Adams county. Tried below before GASLIN, J.

The facts are stated in the opinion.

*Montgomery, Charlton & Hall,* for plaintiff in error:

The plaintiff in error cannot be held to have authorized the indorsement sued on. (1 Daniels, Negotiable Instruments, secs. 292, 294; *Gulick v. Grover,* 97 Am. Dec. [N. J.], 728; *Davidson v. Stanley,* 2 Man. & G. [Eng.], 721; *Rossiter v. Rossiter,* 24 Am. Dec. [N. Y.], 62; *Wood v. McCain,* 42 Am. Dec. [Ala.], 612; *Breed v. First Nat. Bank, Central City,* 4 Col., 481; *Union Bank v. Mott,* 39 Barb. [N. Y.],

180; *Paige v. Stone*, 10 Met. [Mass.], 160; *Craighead v. Petterson*, 72 N. Y., 279; *Stamback v. Read*, 62 Am. Dec. [Va.], 648; *New York Iron Mine v. First Nat. Bank, Negaunee*, 39 Mich., 644; *Perkins v. Boothby*, 71 Me., 91; *Sewanee Mining Co. v. McCall*, 40 Tenn., 620; *Mordhurst v. Boies*, 24 Ia., 99; *Bickford v. Menier*, 107 N. Y., 490.)

The plaintiff in error had no knowledge of the note or indorsement. He did not, therefore, ratify the acts of Elsemore. (*Craighead v. Petterson*, 72 N. Y., 280; *Gulick v. Grover*, 97 Am. Dec. [N. J.], 728; *Bohart v. Oberne*, 36 Kan., 284; *Oberne v. Burke*, 30 Neb., 581; *Baldwin v. Burrows*, 47 N. Y., 199; *Roberts v. Rumley*, 58 Ia., 301; *Reynolds v. Ferree*, 86 Ill., 570.)

*W. W. Morsman* and *M. A. Hartigan, contra:*

A principal who retains the proceeds of a transaction after his attention has been challenged to the same cannot repudiate the agent's acts. He must return the proceeds if he wishes to disaffirm the action of the agent. (*Stewart v. Strawsburger*, 51 How. Pr. [N. Y.], 400; *Sherman v. Smith*, 42 How. Pr. [N. Y.], 199; *Ely v. James*, 123 Mass., 36; *Bacon v. Johnson*, 56 Mich., 182; *Hutchings v. Ladd*, 16 Mich., 493; *Mundorff v. Wickersham*, 63 Pa. St., 87; *Watterson v. Rogers*, 21 Kan., 529; *Ogden v. Machand*, 29 La. Ann., 61.)

The ruling of the court permitting amendment of the petition was without error. (*Griffith v. Short*, 14 Neb., 261; *O'Dea v. Washington County*, 3 Neb., 121; *Struthers v. McDowell*, 5 Neb., 493; *State v. Russell*, 17 Neb., 203; *Pomeroy v. White Lake Lumber Co.*, 33 Neb., 240; *Freeman v. Webb*, 21 Neb., 160; *Klosterman v. Olcott*, 25 Neb., 382.)

RYAN, C.

Charles N. Dietz was sued in the district court of Adams county as indorser on a note of Mary E. Swick and Peter Swick for $286.30, made on May 23, 1890, to C. N. Dietz.

The indorsement on the said note on which Dietz was sought to be held liable was in these words: "C. N. Dietz, per M. L. Elsemore." Dietz was served with summons in Douglas county; his co-defendants, served in Adams county, made default, upon which judgment was rendered against them. The question litigated was the liability of Dietz upon the indorsement set out: first, because of Elsemore's authority to use the name of Dietz in that way, and second, because of after-ratification by Dietz of Elsemore's act in making such indorsement. During all the transactions Mr. Dietz was a resident of Omaha. In the year 1885 he opened a branch lumber yard at Hastings and placed Mr. Elsemore in charge of it as his agent. The authority conferred upon this agent was to sell lumber and perform the duties which would naturally devolve upon him as manager of a branch lumber yard at Hastings. Mr. Bostwick at that time was president of the City National Bank at Hastings, the defendant in error. The testimony of Mr. Dietz as to his conversation with Mr. Bostwick at that time stands uncontradicted, and was in substance as follows: I advised Mr. Bostwick in regard to his [Mr. Elsemore's] authority here; that Elsemore's business was that of an agent in my branch business here, and in order to do the business easier I should need to have a bank account and that Elsemore would deposit the money in that bank and transmit to me and make checks for the purpose of transmitting funds to me and pay any local expenses here; that was merely done for convenience. In the fall of 1888 I told him, Mr. Bostwick, I would have no use of this bank at any time by the way of accommodation of money, and that my account must never be overdrawn. I never gave Mr. Elsemore any authority under any circumstances or in any manner to sign or indorse my name to a note. It is very clear from this evidence that Mr. Elsemore had no authority to indorse the name of Mr. Dietz and thereby render him liable as indorser.

2. As to the matter of ratification, Mr. Dietz testified that the first time he ever heard Elsemore had discounted paper in his name was when this suit was brought and the summons served; that he had never heard that the Swick note had been taken and discounted at the bank before this suit was commenced; that Mr. Elsemore had never given him any property, either directly or indirectly, at the time this suit was commenced; that the first knowledge witness had that Elsemore had ever signed his name to the note was obtained at the time he came down to Omaha, in August, 1890, and told him that he had so signed his name. Mr. Elsemore was sworn as a witness, and testified in relation to this part of the transaction that he told Mr. Dietz that there had been certain moneys of his used in connection with the Dry Pressed Brick Company's business and in other respects, and that at the solicitation of Mr. Bostwick, Mr. Elsemore had signed the name of Mr. Dietz to certain notes then in the City National Bank of Hastings, being guarantied by Mr. Bostwick that they should be taken care of. These notes were of the amount of about $11,000 or $12,000. In addition to the above, this witness testified that at the same interview with Mr. Dietz he told him that between $5,000 and $6,000 of Mr. Dietz's money had been collected and applied to the brick company's business, as well as the $11,000 or $12,000 just referred to. Mr. Elsemore proposed to protect Mr. Dietz so he would not lose any money on account of his (Elsemore's) dealings with Bostwick. For this purpose Elsemore testified that he made a bill of sale in blank of the brick company's property, which was in his name, and made a deed in blank of his own real estate, which was of the value of $10,000 to $12,000. He also transferred to Mr. Dietz certain insurance policies and stock. Afterwards, at the request of Mr. Bostwick, the name of C. H. Paul was inserted in the blanks in the deeds and all the instruments. Mr. Bostwick suggested the name of Paul for this purpose because Paul was a stockholder in the City

National Bank, and witness believed also that Mr. Bostwick said he was a director.     Mr. Bostwick agreed to straighten the matter up and pay to the attorney of Mr. Dietz the amount Mr. Dietz's book showed was short.     Witness had present a statement of this amount and Bostwick agreed to pay it.     The brick company owed witness on the books something over $9,000 and Bostwick was a member of that company.     The members of the brick company were Harrison Bostwick, C. H. Paul, Mr. Knowlton, and witness. In a conversation had with Mr. Bostwick the latter said he knew that witness had used moneys from the business of Mr. Dietz, and that he knew that the brick company owed Mr. Dietz about $6,000.     In addition to the evidence just set out there was more of the same character which it is deemed unnecessary to quote.     There is no evidence which tends to show that Mr. Dietz knowingly received anything of value on account of his indorsement on the note in question.     In so far as we are able to discover from the testimony, the proceeds of the note were used in the business of the Pressed Brick Company, a corporation in which Mr. Bostwick was jointly associated with Mr. Elsemore, and in which Mr. Dietz had no interest, and concerning which, and its transactions, he was entirely ignorant.     The proceeds of the note indorsed nominally went into the account of Mr. Dietz, but were withdrawn by his agent for his own use independently of the business with which he had been intrusted by Mr. Dietz.     This was with the knowledge and acquiescence of Mr. Bostwick, the president of the City National Bank.     To this bank must be imputed the knowledge possessed by its president that Mr. Elsemore was diverting the proceeds of sales as well of lumber as of notes belonging to Mr. Dietz to the transaction of business in which he had no interest.     If Mr. Dietz had received the proceeds of this note after it had been discounted without his authority, and his acceptance of such proceeds had been with knowledge of the act of

his agent, there would have been such a ratification as perhaps would have bound him upon this indorsement, but the evidence shows nothing of the kind. The indorsement clearly was made for the purpose of enabling the agent to misappropriate the money of his principal, and the president of the bank with which the discount was made was fully cognizant of this fact and was a party to the agent's malfeasance. There has since been no ratification with knowledge by Mr. Dietz of this transaction or of the series of transactions of which this particular one was part. He has simply received whatever his quondam agent has been able to turn over to him on the indebtedness of $11,000 or $12,000, and the discount of notes of $5,000 or $6,000 in amount by way of payment or security. We know of no rule of law which would forbid a party receiving payment or security of indebtedness justly due him through the unfaithfulness of his agent, under pain of impliedly thereby being held to have ratified all his agent's misdeeds whether known to him or not. On this branch of the case there was no evidence to sustain the verdict because of a ratification on the part of Dietz.

3. About a month after the return of the verdict, but before the rendition of the judgment, leave was given the defendant in error to amend its petition so as to claim the amount of the Swick note from Mr. Dietz on account of moneys had and received to his use. This amendment was improperly allowed, for it changed substantially the nature of the claim made up to that time. As has already been stated, and perhaps reiterated, the proceeds of the discount of these notes were used in the business of the Pressed Brick Company. If any party was liable as for money had and received it was the Pressed Brick Company and not Mr. Dietz, for this money was not received or applied to his use. For the reason that there was no evidence upon which the verdict can be sustained, the judgment of the district court is

REVERSED.