BYBEE v. EMBREE–McLEAN CARRIAGE CO.

(Court of Civil Appeals of Texas.    Feb. 18, 1911.)

1. SALES (§ 137*)—REMEDIES OF PURCHASER—FAILURE OF TITLE.

Where, though another had a writ of sequestration levied on buggies sold defendant, under which they were held for a while, claimant afterwards filed a disclaimer of any interest in the buggies, of which defendant had notice, he could not claim that his title had failed, so as to defend on that ground when sued for the price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 333; Dec. Dig. § 137.*]

2. PRINCIPAL AND AGENT (§ 148*)—AUTHORITY OF AGENT—NOTICE OF EXTENT OF AUTHORITY.

Where an order contract for the sale of buggies provided that all representations and agreements made by the seller's salesman, which were binding upon the parties, were written on the order, and that it was subject to the seller's acceptance and would not be countermanded, the seller was not bound by oral promises by its salesman, without its knowledge, that it would protect the buyer against any claim of title or interest in the buggies by third persons.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 539; Dec. Dig. § 148.*]

3. PRINCIPAL AND AGENT (§ 121*)—EVIDENCE—EXTENT OF AUTHORITY.

Where, in an action for the purchase price, the authority of the seller's agent was not shown to be in writing, the agent could testify as to the extent of the authority conferred upon him by his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 413–415; Dec. Dig. § 121.*]

4. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSIONS.

Testimony by the seller's agent, in an action for the price of goods, that his purpose of sending the order to his principal was "for confirmation" was not objectionable as a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2157; Dec. Dig. § 471.*]

5. EVIDENCE (§ 343*)—BEST EVIDENCE—CHATTEL MORTGAGE—CERTIFIED COPIES.

If the original order for goods, which was filed as a chattel mortgage, was on deposit in the office of the clerk of the county where the property was, a certified copy thereof was properly admitted in evidence in an action for the purchase price.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1315–1330; Dec. Dig. § 343.*]

6. INDEMNITY (§ 1*)—WHAT CONSTITUTES—STIPULATION FOR ATTORNEY'S FEES.

A stipulation in a contract to pay attorney's fees, if it be necessary to collect money by suit, is a contract of indemnity, so that to recover attorney's fees plaintiff must have paid or contracted to pay the amount stipulated in the contract therefor.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 1; Dec. Dig. § 1.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the Embree-McLean Carriage Company against Charles Bybee. From a judgment for plaintiff, defendant appeals. Affirmed on condition.

D. A. Frank, for appellant. Spence, Knight, Baker & Harris, for appellee.

BOOKHOUT, J. This is a suit brought by Embree-McLean Carriage Company, plaintiff below and appellee herein, against Charles Bybee, a citizen of Montgomery county, Tex., defendant below and appellant herein, filed in the district court of Dallas county, Tex., on the 7th day of February, 1909, for a balance due on a contract of sale for certain buggies described in said petition in the sum of $645, with interest from September 18, 1908; plaintiff asking for a foreclosure of a chattel mortgage lien upon the buggies described in the plaintiff's petition, and also for attorney's fees in the sum of 10 per cent. upon the total amount due.

The suit was based upon a written contract executed by Bybee of date December 16, 1908, the contract being for the sale of six buggies, and recited, "being the identical vehicles which had theretofore been sold by plaintiff to Tullos & Ogg, and thereafter received back by plaintiff from them." The contract also contains the following material provisions in substance: That Bybee should pay for said vehicles $645, with accrued interest from September 18, 1908, to January 1, 1909, as follows: Cash $50.75, and balance by five notes in equal amounts, due at one, two, four, six, eight, and ten months from January 1, 1909, with interest at 10 per cent., said notes to be secured by chattel mortgage on the said vehicles; "title to vehicles hereby purchased to remain in Embree-McLean Carriage Company until the debt, whether open account or settled by note, is paid in cash. * * * If above settlement be not made within thirty days from date of shipment, then the amount shall become immediately due and payable at Dallas, Texas, together with all attorney's fees and costs incurred and collected. * * * That all representations, promises and agreements made by your salesman that are binding on you are written on this order, which also is subject to your acceptance and will not be countermanded." Plaintiff also sued defendant to recover the additional amount of $60 evidenced by Bybee's note for that amount, due at 30 days from December 17, 1908, with 10 per cent. interest, which note retained the title to the same six vehicles until the amount thereof should be paid, and further provided that the maker should pay all attorney's fees and expenses incurred in collection, if said note is placed in the hands of an attorney for collection. The order contract sued upon was duly registered as a chattel mortgage in Harris county, Tex., where defendant Bybee then resided and where said vehicles were located.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Plaintiff made one Marshall H. Smith a party defendant, alleging that he had sued out a writ of sequestration or attachment and caused same to be levied upon the said vehicles, and converted plaintiff's mortgaged property, in violation of plaintiff's rights thereto. Plaintiff alleged the failure and refusal of Bybee to execute the notes for the purchase price of said vehicles and the failure to pay the said note sued on. Defendant Smith filed his disclaimer on April 28, 1909, disclaiming all right, title, and interest in and to said vehicles. Defendant Bybee by his second amended original answer pleaded, after a general denial, in substance: That the said vehicles were bought from plaintiff's agent under an agreement from the agent that plaintiff would protect Bybee from all trouble or disturbance in the possession of said buggies and would guarantee the title to said defendant; that he relied on this promise of the agent and executed the written order for the vehicles sued upon; that the clause therein that "all representations, promises and agreements made by your salesman that are binding on you are written on this order, which is also subject to your acceptance and will not be countermanded," was in the contract without the knowledge or consent of the defendant and was not called to his attention by the agent, and that because of such misrepresentation and concealment and fraud that provision of the contract was not binding on him; that in about three or four weeks after the agreement was entered into, during which time the buggies had been in defendant's possession, that Marshall H. Smith, or some other party, by some process of law, wrongfully took possession of the buggies and still retains same; that Bybee had made all reasonable efforts to get plaintiff to comply with this agreement to protect him in his possession of the buggies as against the mortgage held by Marshall H. Smith, but that plaintiff had failed and refused to comply with its contract, etc. Bybee by a cross-action sought to recover against plaintiff and also against Marshall H. Smith very large damages comprising various items, but special exceptions thereto were sustained by the court.

Plaintiff, by supplemental petition, after a general denial of all matters set out in the special defenses of Bybee, specially pleaded that it never warranted or in any wise guaranteed that the buggies in controversy would not be claimed by Marshall H. Smith, and that his claims would not be attempted to be enforced; that shortly after Smith caused the buggies to be levied on in his suit against persons other than plaintiff and Bybee, Smith agreed to release the buggies and return them to Bybee, but that Bybee wrongfully refused to accept the vehicles; that plaintiff was in no wise bound to protect the vehicles in controversy from trespassers; that Smith was only a trespasser; that the title to the vehicles which plaintiff sold Bybee had never failed, that Smith had long since disclaimed any right or title or interest in the vehicles, and had repeatedly tendered same back to Bybee, and that if Bybee had not long since obtained possession of the vehicles, it was his own fault and willful act; that the alleged representations, warranties, and guaranties alleged to have been made by plaintiff's agent were, if made, without any authority whatever on the part of plaintiff; that the contract executed by Bybee together with the note sued on, evidenced the entire contract between plaintiff and Bybee; that the order contract was sent in regular course to plaintiff at St. Louis, Mo., for acceptance or rejection, and plaintiff accepted same without any notice whatever of any warranties, representations, or other matters not contained in the written contract, and plaintiff in no wise authorized any other or different contract to be made with Bybee. That plaintiff relied on, and had the right to rely on, the written contract executed by Bybee and sent to plaintiff at its home office for acceptance or rejection; that plaintiff accepted same in accordance with its terms, of which Bybee had notice, and settlement papers were accordingly sent to Houston for Bybee's execution; and plaintiff prays as in its original petition.

At the close of the evidence the court instructed a verdict for plaintiff as follows: "You are instructed to find a verdict for the plaintiff against the defendant, Charles Bybee, for the sum of $627.22, together with such further sum as you may and believe from the testimony is the amount of reasonable attorney's fees for the prosecution of this suit, together with a foreclosure of plaintiff's contract and mortgage lien upon the vehicles described in plaintiff's petition." The jury returned a verdict for $627.22 and for $62.70 attorney's fees, as directed by the court, and judgment was accordingly entered.

It is assigned as error that the court erred in giving said charge. The proposition presented is that, in a suit upon a contract for the sale of certain buggies, when it appears that at and before the closing of the deal a part of the consideration of the contract was that the seller should protect the party buying said buggies from the claims of a third person known at that time by both parties to be claiming certain rights to said buggies, and an order was signed by the buyer at the solicitation of the agent of the seller upon the assurance that the seller would protect the buyer from the third party claiming rights to said vehicles, the seller having failed to protect the buyer in the possession of said vehicles, would be such a failure of consideration as to void the contract of sale, and the seller would have no right of recovery against the buyer.

The defendant, Charles Bybee, testified:

"I leased a barn on Brazos street there in Houston and bought out what stuff Mr. Tullos and Mr. Ogg had that wasn't mortgaged, and afterwards Mr. Martin came down and these five runabouts and top buggies were there, and he proposed to sell them to me. In the meantime I learned about this Smith mortgage on them and would not buy them at first. But after Mr. Martin guaranteed them, that he would take care of me in the matter, I bought them from him, and I had to be away and left my brother there, and when I got back to Houston the notes were there to be signed, and the buggies were taken away from me, and Mr. Martin came down and did what he could to get them for me, but did not get them. I did not sign the notes on account of the fact that I did not have possession of the buggies. I didn't feel like signing the notes, because the buggies were taken away from me under this second mortgage. I had a conversation with Mr. Martin in regard to regaining possession of the buggies, and he stayed in Houston two or three days and went to see Smith, and he at one time agreed to give them to me, but after we went to get them he refused to give them up to me. We went to get the buggies the next morning after that agreement was reached. I went to his office, and he then told us that he would not give them up, and said that after consulting with his lawyers he had changed his mind. Mr. Smith has not given them up to me yet, nor has he ever made any offer to do so. That was about January 1st, of this year, if I remember rightly. Mr. Smith has never made any disclaimer as to the possession of these buggies. He has never turned the buggies over to me. I have seen the buggies several times since then running around Houston, with different parties driving them. I heard about the second mortgage and I met Mr. Martin at the Tremont Hotel, and I said I did not want to buy a lawsuit and did not want the buggies under any consideration, and he guaranteed me that the company was behind him, and he would protect me. * * * I would not have bought them at all, if Mr. Martin had not agreed to protect me. I hesitated a day or two about buying them, knowing that this second mortgage was against them. I would not have made the purchase without his promise that he would protect me." E. D. Martin testified that he was agent for the plaintiff and made the sale twice, of the same buggies which are the subject of this suit, first to Tullos and Ogg at Houston and later to Bybee, when Tullos and Ogg failed to pay for the buggies. He testified further: "Then I sold the buggies to the defendant, Charles Bybee, because Tullos and Ogg had dissolved and turned the buggies over to me and were compelled to do it, and told me they had a customer. I knew that Tullos and Ogg had given a second mortgage on this property. I told Bybee that Mr. Tullos had

given a second mortgage on the property, but that the title was good and I could give him a perfect title, which I did. I explained it fully and fairly. I told him that the Embree-McLean people were behind me and that we would protect him from all lawful procedure, and that at that time we were discussing the second mortgage. The contract was finished when Bybee made the cash payment on the buggies. I think that I knew that the buggies had been taken away from Mr. Bybee by Mr. Marshall H. Smith before the notes were presented to him for signature, and I made every effort in my power to regain possession of them for him, for the reason that I promised Mr. Bybee that his title would be good."

The defendant, Bybee, executed the order contract sued upon, understanding that it had to go forward to St. Louis to plaintiff for acceptance or rejection. This order contained a clause set out in the pleadings that "all representations, promises and agreements made by the salesman that are binding on you are written on this order which is also subject to your acceptance and will not be countermanded." There is no proof that Bybee was in any way imposed upon in the obtaining of his signature to the contract, or that any misrepresentation whatever was made to him. The contract was accepted by plaintiff in good faith at St. Louis, Mo., without any notice of the alleged parol agreements as claimed by Bybee. Again the title of the vehicles as conveyed to Bybee by plaintiff has not failed, and while one Marshall H. Smith caused a sequestration writ to be levied on the vehicles under which they were held for a time, yet as early as May of 1909 Smith filed a disclaimer of any right, title, or interest in or to the vehicles, and Bybee's attorney had notice of this fact. It seems clear that a principal in a written contract is not bound by verbal promises or agreements made by his agent without the principal's knowledge or consent, in cases where the contract is not completed by the agent, but is forwarded to the principal for the purpose of acceptance or rejection, and where the principal accepts the contract in good faith and the other party to the contract has notice thereof. The trial court correctly charged the jury to find their verdict for the plaintiff against defendant Bybee, in view of the undisputed testimony, as shown by the record; there being no testimony that plaintiff obtained the contract order sued upon by any fraud or misrepresentation, and Bybee specially contracting that plaintiff should not be bound by any representations, promises, or agreements except those written in the order. McFarland v. McGill, 16 Tex. Civ. App. 298, 41 S. W. 402; Anderson v. Cleburne, etc., Co., 44 S. W. 929; Janes v. Brewing Co., 44 S. W. 896; Case T. M. Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835; Harris, etc., Fountain Co. v. Pressler, 35 Tex.

Civ. App. 360, 80 S. W. 664; McCormick v. Kampmann, 102 Tex. 216, 115 S. W. 24; Belcher v. Mulhall, 57 Tex. 17.

While the witness E. D. Martin was testifying he was asked the question, "What authority have you to make a complete sale without first submitting the contract to the company? This question was excepted to by defendant, because it was incompetent, immaterial, and irrelevant. These objections were overruled and the witness answered, "None." It is insisted that the court erred in this ruling. The authority of the agent, Martin, was not in writing, and it was competent for the witness to testify as to what authority had been conferred upon him by his principal. Nor was there any error in permitting said witness to testify, over the objection, that the same was the conclusion of the witness; that his purpose in sending the contract order to headquarters at St. Louis was "for confirmation."

Upon the trial the plaintiff was permitted to read in evidence, over objection, a certified copy of the order for the goods taken by salesman Martin, sent to the company at St. Louis and upon which the goods were sold. This order reserved in the company the title to the goods, and was filed and deposited as a chattel mortgage under the statute in the county where the goods were situated. A certified copy was filed in the trial court before trial and read in evidence, over the objection that the same was not the best evidence. The original being on deposit in the office of the clerk of the county where the property was situated, a certified copy was properly admitted in evidence. Oxsheer v. Watt, 91 Tex. 402, 44 S. W. 67.

Upon the trial the defendant requested a special charge as follows: "You are instructed that there is no evidence before you of the employment of any attorney by the plaintiff in this case, or of the payment by the plaintiff of any amount whatever as attorney's fees; you are therefore not to return any verdict for attorney's fees, except those provided for in the $60 note which is in evidence before you." The failure to give this charge is assigned as error. This assignment must be sustained. The petition alleged that plaintiff has been compelled to place its said order contract and its said note above described in the hands of its attorneys for collection and to institute suit thereon, and thereby the defendant, Bybee, has become bound and liable and has promised to pay unto your plaintiff all reasonable attorney's fees and costs incurred in collecting the claims thereby evidenced. Plaintiff avers that 10 per cent. of the principal and interest owing upon said contracts, respectively, is the reasonable and customary attorney's fees to be charged and paid for the collection of such claims, and thereby defendant, Bybee, has become bound and liable

and promised to pay to your plaintiff, in addition to the principal and interest of its said claims, 10 per cent. thereon as its reasonable fees for its attorneys in the collection of said claims by the prosecution of this suit. The plaintiff offered evidence that 10 per cent. was a reasonable attorney's fee for the collection by suit of the balance due on the contract. The evidence did not show that the contract and note had been placed in the hands of an attorney for suit, or that plaintiff had paid or agreed to pay any certain sum as attorney's fees for services in collecting the amount due on the contract and note. It is now held that the stipulation in a contract for the payment of attorney's fees, if the same is collected by suit, is a contract of indemnity, and that to authorize a recovery thereof the plaintiff must allege and prove either that he has paid or contracted to pay the amount stipulated in the contract. Hassell v. Steinmann (opinion by this court delivered December 3, 1910, and not yet officially published) 132 S. W. 948; Reed v. Taylor, 129 S. W. 865. No other objection is made to the recovery of attorney's fees. It is conceded in the appellant's brief that a recovery could be had by appellant for the attorney's fees stipulated in the $60 note.

It follows that the cause must be reversed, unless the appellee shall, within 10 days, enter a remittitur in this court for $56.19, the difference between the attorney's fees as found by the jury and the attorney's fees which appellant concedes he was entitled to recover. If this is done, the judgment will be reformed, and as reformed affirmed; otherwise it will be reversed, and the cause remanded.

Affirmed on condition.