Argued October 31, decided December 10, 1912.

## CRANSTON v. WEST COAST LIFE INSURANCE COMPANY.*

(128 Pac. 427.)

Insurance—Life Insurance—Conditions Precedent to Liability—Payment of Premium.

1.    Insurance under a life policy being by its terms based on payment of a certain amount on the day of its date, as a premium, such payment is a condition precedent to liability of the insurer.

Payment—Nature and Requisites.

2.    "Payment" is the discharge of an obligation by the delivery and acceptance of money or of something equivalent to money which is regarded as such at the time by the party to whom the payment is due.

Payment—Accepting Note of Debtor.

3.    Acceptance of the debtor's note is not payment of a debt unless it is at the time so understood or agreed.

Insurance—Life Insurance—Payment of Premiums—Authority of Soliciting Agent—Limitations in Policy.

4.    The terms of a life policy, authorized by the application therefor, that it is based on the payment, on the date thereof, of the first premiums, that only certain officers, and they only in writing, can modify it or extend time for paying premiums,

---

*The question of payment by note of debtor is treated in a note in 35 L. R. A. (N. S.) 2.

As to unsuccessful attempt to collect premium as waiver of forfeiture, see note in 18 L. R. A. (N. S.) 902.                          REPORTER.

and that the company shall not be bound by any promise or representation of any other person, and that premiums are payable at the home office, but may be paid to agents producing receipts signed by certain officers, are limitations on the authority of the soliciting agent, to the knowledge of insured; so that the company is not bound by such agent taking applicant's note for the first premium, even with agreement that it shall bind the company as payment of the first premium, he not even having such a receipt.

**Pleading—Reply—Departure.**

5.   One cannot sue on a contract according to its terms, and by his reply plead a waiver of terms.

**Insurance—Premiums—Waiver of Payment—Novation.**

6.   There was no waiver of the payment by insured to insurer of the first premium, by the policy made a condition precedent to liability, by reason of T., the local agent, unauthorized to accept payment, taking the note, running to himself, of insured, for the amount of the premium, and the insurer charging the amount of the premium to B., the general agent; insurer not having agreed to accept T. as its debtor, or to release insured, and insured not having agreed to pay B., so that there was no novation.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Irene M. Cranston against the West Coast Life Insurance Company. The facts are as follows:

After alleging the corporate character and existence of the defendant as a life insurance company, the complaint contains these allegations:

"That on the first day of September, 1910, defendant, upon consideration of the payment to it of $27.95, made and delivered to one Walter A. Cranston its policy of insurance and thereby insured the life of said Walter A. Cranston in the sum of $1,000 payable to plaintiff after the notice and proof of the death of said Walter A. Cranston; that on the 31st day of January, 1911, in Baker County, State of Oregon, the said Walter A. Cran-

ston died; that plaintiff was the wife of said Walter A. Cranston at the time said policy was issued to him and the beneficiary named in said policy and so remained at the time of his death; that up to the time of the death of said Walter A. Cranston, all premiums which accrued on said policy were paid at the time they accrued; and that in all other respects the said Walter A. Cranston duly performed all the agreements and conditions of said policy on his part."

The remainder of the complaint relates to notice and proof of death and nonpayment of the face of the policy. Except that Walter A. Cranston died and that the plaintiff is the beneficiary named in the policy described, the quoted portion of the complaint is traversed by the answer. Further answering, the defendant states certain terms and conditions of an application to it by Walter A. Cranston, together with other terms of the policy relied upon by plaintiff, all of which will be more particularly noticed hereafter, and further avers that the premium of $27.95 provided for in the policy has never been paid to the defendant or to any of its authorized agents. Another defense, of which only a mention is deemed necessary, is in substance that Walter A. Cranston at the time he made application to the company for insurance was a minor and, after the issuance of the policy, repudiated the contract evidenced thereby and refused to pay the premium. The affirmative defenses were traversed in material particulars by the reply, and, concerning the allegation of nonpayment of the premium, the reply alleges in substance that about August 24, 1910, the decedent made, executed, and delivered to one Waite Thurston, who solicited the application for insurance from this decedent, a written, negotiable promissory note of the said Walter A. Cranston in the principal sum of $27.95, which note Thurston accepted in full payment and satisfaction of the first premium on the policy in controversy in this case. The following allegation also appears in the reply:

"That after the application for insurance of the said Walter A. Cranston had been accepted by the defendant company, said company duly executed and issued a policy of insurance on said Walter A. Cranston's life in favor of the plaintiff as beneficiary and delivered said policy, by placing in the mails, to its general agent, H. T. Booth, who in turn delivered said policy to Waite Thurston, the agent who solicited said insurance and accepted a negotiable promissory note of the insured, with instructions to deliver said policy to said Walter A. Cranston; that the defendant company, upon delivering said policy to its general agent, H. T. Booth, charged to his account the amount of this premium, thereby substituting the liability of the agent for that of the insured; that in accordance with the rules and customs of the defendant company, their agents, general and local, were responsible for all premiums received by them on behalf of the company or general agents; that agents were required to remit to the general agent or company at stated intervals for all moneys received by them and previously unremitted, including all premiums collected or put in force by agents; and that agents are required to furnish and keep in force a good and sufficient bond for the faithful performance of their duties."

At the trial the plaintiff produced as a witness H. T. Booth, who was general agent for the defendant in the State of Oregon during the year 1910, and testified that the policy in question was received by him from the office of the defendant company in the latter part of October, 1910, and by him mailed to Waite Thurston, an agent under him, who resided at Baker City, following the customary practice of sending the policy to him for delivery, and without giving him any specific instructions, but assuming that Thurston would deliver the policy in the customary way to Mr. Cranston personally. The plaintiff, herself, testified.that her husband, Walter A. Cranston, delivered the policy to her some time in September, 1910; that she had kept it ever since; and that no payment had been made upon it. The policy itself was then introduced

in evidence without objection, and the plaintiff rested her case. The defendant then moved for a nonsuit on various grounds, but principally for the reason, "that the plaintiff had introduced no evidence tending to show that the first premium of the policy of insurance was paid at the home office of the defendant company in the city of San Francisco at all or that the premium was paid to any agent of the defendant company producing a receipt signed by the president of the defendant company, a vice-president of the defendant company, a secretary of the defendant company, or an assistant secretary of the defendant company, or either thereof; such receipt being countersigned by any agent of the defendant company." But the motion was overruled.

On its part the defendant produced as witness Julian Sonntag, who testified that he was the secretary and treasurer of the defendant company residing in the city of San Francisco, California, and as such secretary and treasurer had control of the office methods, affairs, and records of the company. He identified the original application of Walter A. Cranston for insurance, and testified in substance that based on the application he had forwarded the policy in question to H. T. Booth, general agent in the State of Oregon, together with the official receipt to be delivered to the applicant on the payment of the premium on the policy without specific instructions being given to Booth as to the delivery of the policy, but under the general instructions that it and the policy were not to be given to him until satisfactory arrangements for the payment of the premium had been made. Answering the question, "State whether any moneys have ever been received by the West Coast Life Insurance Company from any source in payment of or part payment of the first premium on said policy of insurance issued by said company upon said application of said Walter A. Cranston," the witness testified, "No money whatever, not a

dollar." The original application referred to was then introduced in evidence on part of the company. The defendant also called H. T. Booth aforementioned, who identified the official receipt referred to in the policy itself and in the application for the policy. Thereupon the defendant offered to prove, but was denied by the court the privilege of proving, by the witness, that the official receipt had been received by him at the time he received the policy; that it was the official receipt referred to in the policy and in the application; that it was signed by one of the executive officers of the company and to be countersigned by the agent upon the payment of the premium; that this receipt had never left his possession and was in his possession continually from the time he received it until after the death of Walter A. Cranston; and that it was the custom of the company to issue but one of such receipts. The defendant excepted to the court's denial of this offer. S. S. Start, a witness for defendant, testified that in November, 1910, he had in his possession a promissory note of Walter A. Cranston of which, omitting the signature and the clause relating to attorney's fees and waiver of demand and protest, the following is a copy:

"$27.95.        Baker City, Oregon, August 24, 1910.
Sixty days after date without grace for value received I promise to pay to the order of Waite Thurston twenty-seven and 95-100 dollars at the office of the First National Bank of Baker City, Oregon, with interest after maturity at the rate of ten per cent per annum, until paid; principal and interest payable in U. S. gold coin. * *"

This note was introduced in evidence. The witness Start further testified that he tried to collect the note from Cranston, and to that end wrote him a letter informing him that the note was due; that the witness wished him to call and pay it; and that afterwards he received a letter from Cranston which was identified by

another witness and which was offered in evidence, the letter being as follows:

> "Keating, Oregon, November, 1910.
>
> S. S. Start:
>
> Dear Sir—My note you have for Waite Thurston against me was taken out when I was a minor. In fact I am still a minor and my guardian says that I must not pay the nate. My guardian says that he has full control over me until I am of age and says I must not pay it. So please give this notice to Mr. Thurston.
>
> (Signed) Walter A. Cranston."

The circuit court refused to allow the letter to be read in evidence, and the defendant excepted. After the defendant rested, the plaintiff again called H. T. Booth and asked him this question:

"Mr. Booth, what is the custom of the defendant company as to charging up the amount of these premiums to the general agent by the defendant company?"

Answering the question, the witness said:

"I will have to make an explanation. I had an account with the West Coast Life Insurance Company known as debit and credit account, and there were credits continually accruing to this account, and frequently I had to authorize the company to make charges against the said account. These credits came from what is known as renewal premiums upon which I had 7½ per cent, and in making up my final report to the company for the close of the year 1910, between Christmas and New Years, I included the Cranston premium as one that was paid, and the company so recognized it at that time."

To the interrogatory quoted the defendant objected before it was answered, on the ground that it was incompetent, irrelevant, and immaterial, and for the reason that it was not proper rebuttal testimony and was an attempt to elicit testimony which would be a departure from the cause of the plaintiff as made in the complaint and apparently tended to show, not a performance of the contract of insurance by the plaintiff, but rather a waiver of the

same by the defendant company, and therefore was at variance with the plaintiff's complaint; but the court overruled the objection. After the answer had been made, the defendant moved to strike it out on the grounds mentioned in the objection and on the further grounds that the answer was not responsive to the question, which motion was denied by the court. After some cross-examination the motion to strike out the testimony of the witness Booth in rebuttal was renewed upon the same grounds specified in the motion to strike out, and in the objection to the question and on the further ground that the portion of the witness' testimony in chief should be stricken out to the effect that the defendant company had a charge against the witness for the Cranston premium in question in this case, for the reason that it now appears that the only evidence of such charge being made is contained in writing and the best evidence has not been offered. This renewed motion to strike out was overruled and the defendant excepted. The foregoing statement condensed from the bill of exceptions is deemed to fairly and substantially state the proceedings at the trial so far as is material for the purposes of this opinion. Both parties having rested, they each moved for a directed verdict, in which dilemma the court overruled the motion of the defendant, sustained that of the plaintiff, and ordered the jury to return a verdict in favor of the plaintiff for the full amount claimed, upon which verdict a judgment was rendered, and the defendant appeals.    REVERSED.

For appellant there was a brief over the names of *Messrs. Holman & Hampson* and *Mr. Claude C. McColloch* with an oral argument by *Mr. Alfred A. Hampson.*

For respondent there was a brief over the names of *Messrs. Clifford & Correll* and *Mr. H. H. Clifford,* with an oral argument by *Mr. Morton D. Clifford.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The transaction in question was initiated by the original application for insurance about which there is no question and which is quoted in and made part of the policy upon which this action was brought.   It states:

"This application of insurance to the West Coast Life Insurance Company is the basis and a part of a proposed contract for insurance.   I hereby agree as follows: (1) That if this application is accepted the policy hereunder shall not take effect until the first premium shall have been paid and accepted by said company or its authorized agent and such policy delivered to and accepted by me while I am in good health.  *  *"

In the application the following question and answer appears:

"Do you agree that only the officers of the company at its home office can accept or reject this or any application and that no knowledge of any person and no statement made or given by or to any person shall bind the company or in any manner affect its rights unless such knowledge and statement are set forth in writing in this application."

Answer:   "Yes."

This application was signed by Walter A. Cranston and, as its terms indicate, was a proposal to the defendant to enter into a contract of insurance.   In response to this offer the defendant issued its policy, which may be termed a counter offer, the material parts of which, for the purpose of this opinion, are as follows:

"The West Coast Life Insurance Company, San Francisco, California, agrees to pay one thousand dollars to Irene M. Cranston, wife of insured, should she survive him, otherwise to the executors, administrators or assigns of Walter A. Cranston, the insured, or to a duly substituted beneficiary under this policy at its home office upon the death of the insured within one year from date or subsequently if this policy shall be renewed according to its terms and immediately upon receipt and approval of proof of death of the insured.   All insurance hereunder is based upon the written and printed application therefor

which is made a part of this contract, a copy whereof is endorsed hereon, and the payment of $27.95 on September 1, 1910, as the premium for one year's insurance. * * All premiums upon this policy are due and payable at the home office of the company in the city of San Francisco, but may be paid to agents of the company producing receipts signed by the president, a vice president, secretary or assistant secretary and countersigned by such agents. * * Only the president or a vice president together with the secretary or assistant secretary (and then only in writing signed by them) have power on behalf of the company to issue permits or make or modify this or any contract or to extend the time for making any premium payment and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above-named officers and by them only in writing and signed conjointly as stated."

1. This policy was dated September 1, 1910, and forms the basis of the plaintiff's action. It does not recite, as some cases state, that the premium has been paid. By its terms it is based upon the payment of $27.95 on September 1, 1910, which payment consequently is a condition precedent to the requiring of any disbursement on the part of the defendant. As said by Mr. Justice BEAN, in *Faber* v. *Hougham,* 36 Or. 428 (59 Pac. 547):

"It is familiar law that, if an action be brought on the covenants of an executory contract, it is necessary as a general rule for the plaintiff to aver and prove full performance on his part. * * These questions are learnedly discussed by Mr. Clark in his excellent work on Contracts, and as applicable to the case at hand we take the rule to be as stated by him: 'When it appears that one of two covenants or promises is to be performed at an earlier date than the other, the rule is simple and uniform, namely, that the covenant or promise that is to be performed first is independent and absolute, while the one that is to be performed last is dependent on the performance of the former being a condition precedent to the performance of the latter.' "

If therefore nothing else is shown, it is incumbent upon the plaintiff to show performance of the condition of payment of the premium, and with that principle in view she has alleged:

"That up to the time of the death of the said Walter A. Cranston all premiums which accrued on said policy were paid at the time they accrued, and that in all other respects said Walter A. Cranston duly performed all the agreements and conditions of said policy on his part."

Having therefore alleged payment or performance, the plaintiff must prove the same when the allegation is traversed, or she cannot prevail.

2. "Payment" is the discharge of an obligation by the delivery and acceptance of money or of something equivalent to money which is regarded as such at the time by the party to whom the payment is due. Said Mr. Chief Justice LORD, in *Bush* v. *Abrham*, 25 Or. 336 (35 Pac. 1066):

"Payment, in a restricted sense, is a discharge in money of a sum due. As usually understood, it means the transfer of money from one person who is the payer to another who is the payee in satisfaction of a debt. In such sense it would not include an exchange or compromise or an accord and satisfaction, but would mean the full satisfaction of the debt in money. But in its general sense payment is the performance of an agreement or the fulfillment of a promise or obligation whether it consists in giving or doing. The discharge of a contract or obligation in money or its equivalent with the assent of the parties would constitute payment. It may be made in something else than money; in fact, anything that the creditor may accept as payment. It is a mode of extinguishing obligations. To constitute payment, therefore, money or some other valuable thing must be delivered by the debtor to the creditor for the purpose of extinguishing the debt and the creditor receive it for the same purpose."

Other definitions are as follows:

"A payment is defined to be the performance of an obligation for the delivery of money."

"Payment is defined to be the act of paying. The delivery of money in payment in the course of business."

"Payment is defined to be the act of paying or that which is paid to discharge the obligation or duty; satisfaction of a claim or recompense; the fulfillment of a promise or the performance of an agreement; the discharge in money of a sum due."

"In legal contemplation, payment is the discharge of an obligation by the delivery of money or its equivalent and is generally made with the assent of both parties to the contract." 6 Words and Phrases, 5247, and authorities there cited.

3. It is alleged in the reply in substance that a note was given by Cranston to Waite Thurston and accepted by the latter in full and complete payment of the first premium on the policy. It is not alleged that the defendant knew of this transaction with Thurston or ratified it, or that the note was given to the defendant itself, or even that Thurston had authority to bind it by such a transaction. In *Stringham* v. *Mutual Insurance Co.*, 44 Or. 447, 459 (75 Pac. 822), Mr. Justice WOLVERTON says:

"It has been firmly settled by this court that the acceptance of a note is not to be considered as taken in discharge or payment of the debt unless it is at the time so agreed and understood. *Black* v. *Sippy,* 15 Or. 574 (16 Pac. 418); *Johnston* v. *Barrills,* 27 Or. 251 (41 Pac. 656: 50 Am. St. Rep. 717); *Schreyer* v. *Turner Flouring Co.,* 29 Or. 1, 4 (43 Pac. 719); *Kiernan* v. *Kratz,* 42 Or. 474 (69 Pac. 1027: 70 Pac. 506.)"

There is not a word of testimony disclosed by the bill of exceptions tending to show that there was any agreement between Cranston and Thurston that the note should be accepted by the defendant in payment of the premium or, for that matter, that it was understood or agreed that Thurston, himself, should accept it as payment for the premium. Even though the allegations of the reply in that respect should be considered as well pleaded, yet they fail for want of proof to sustain them.

As disclosed by the testimony, the utmost that can be said in that connection is that the note of Cranston to Thurston for $27.95 was extant and that the latter solicited the application for the insurance. A strong circumstance tending to show that the note was not intended as payment is a declaration of the policy itself which was accepted by the insured and upon which she here relies, in these words:

"That the insurance hereunder is based upon the written and printed application therefor which is made a part of this contract, a copy whereof is indorsed hereon, and the payment of $27.95 on September 1, 1910, as the premium for one year's insurance."

According to its own terms as disclosed by the evidence, the note in question was not due or payable until 60 days after August 24, 1910, or October 23d of that year. It is plain that the note could not have been intended as payment, for the policy itself requires payment as such to be made on September 1st a different date from that of the maturity of the note.

4. Without showing any agreement even by Thurston or Cranston to that end, the plaintiff relies upon the act of Thurston in taking a note payable to himself as payment of the first annual premium. No attempt whatever is made to show that the company knew anything of this note prior to the death of the insured. In cannot be claimed by plaintiff that the act of Thurston in taking the note, even if it was agreed by him that it would bind the company as payment of the above premium, was within the scope of his real or apparent authority for the reason that in the beginning Cranston, in his application for the policy, agreed that no knowledge of any person and no statement by or to any person should bind the company or in any manner affect its rights unless this knowledge and statement should be set forth in writing in the application. Again, one of the conditions of the

policy which he accepted and upon which the plaintiff depends is to this effect:

"Only the president or vice president together with the secretary or assistant secretary and then only in writing signed by them have power in behalf of the company to issue permits or make or modify this or any contract or to extend the time for making any premium payment and the company shall not be bound by any promise or representation heretofore or hereafter given by any person other than the above named officers and by them only in writing and signed by them jointly as stated."

Further, it is said as one of the conditions of the policy:

"All premiums upon this policy are due and payable at the home office of the company in the city of San Francisco but may be paid to agents of the company producing receipts signed by the president, a vice president, secretary, or an assistant secretary and countersigned by such agent."

In the face of his own agreement in the application authorizing such conditions and his acceptance of the policy, the insured had no right to deal with Thurston in any way inconsistent with these terms for they acted as limitations on the authority of the soliciting agent within the knowledge of the assured. As said by Mr. Chief Justice EAKIN in *Baker* v. *Seaweard,* 63 Or. 350 (127 Pac. 961):

"It may be stated generally that a principal is not bound by the acts of his agent unless within the real or apparent scope of the authority of such agent, and one dealing with an agent is bound at his peril to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof. * * Where a party relies upon a contract made with a person claiming to be the agent of another, he must prove, where the agency is disputed, that he was expressly empowered to make the contract, and that its terms were within the scope of his authority."

The rule is thus stated in 31 Cyc. 1329:

"Limitations which are known to a person dealing with an agent are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with the agent contrary thereto. The principal may make the authority of the agent as broad or as narrow as he will, and any lawful limitations which he chooses to impose upon the agent's powers and which are not in the nature of secret instructions will be as binding upon third persons legally charged with notice of them as upon the agent himself; and, if the authority is a restricted and limited one, then such limitations form part of the power itself, and third persons must know them at their peril. If specific instructions are brought home to the knowledge of the third person dealing with the agent, it cannot matter whether he is a general or special agent; in either case his power to bind his principal will be limited by these known instructions or limitations."

The following citations are instructive on this subject: *Hutson* v. *Prudential Ins. Co.*, 122 Ga. 847 (50 S. E. 1000) ; *Lucas* v. *Rader*, 29 Ind. App. 287 (64 N. E. 488) ; *Carson* v. *Culver*, 78 Mo. App. 597; *Bybee* v. *Embree-McLean Carriage Co.* (Tex. Civ. App.), 135 S. W. 203; *J. I. Case Threshing Machine Co.* v. *McClamrock*, 152 N. C. 405 (67 S. E. 991) ; *First National Bank* v. *Bean*, 141 Wis. 476 ( 124 N. W. 656: 135 Am. St. Rep. 50) ; *Bronson* v. *Weber Implement Co.*, 135 Mo. App. 483 (116 S. W. 20) ; *Dietz* v. *Hastings City Nat. Bank*, 42 Neb. 584 (60 N. W. 896) ; *Catoir* v. *Am. Life Ins. Co.*, 33 N. J. Law, 487; *Gilbert* v. *Deshon*, 107 N. Y. 324 (14 N. E. 318) ; *Marvin* v. *Universal Life Ins. Co.*, 85 N. Y. 278 (39 Am. Rep. 657).

The note ought to be laid out of the case because of the utter absence of any testimony tending to sustain the allegations of the reply that Thurston accepted the note in payment of the first premium. Moreover, Thurston, not having been equipped with the receipt mentioned in the policy, was, within the knowledge of the assured,

not authorized to accept payment in any form so as to bind the company, and, again, it is not pretended that during the lifetime of the assured the action of Thurston came to the knowledge of any of the officers whom the assured agreed could be the only ones who could extend the time for any premium payment. Taking the note out of the case would make good the ruling of the court in excluding the letter of Cranston to Start above quoted. The whole issue about the note was spurious and irrelevant because on behalf of the defendant it is not admitted in any way that the note was given to or received by the company in payment of the premium. Neither is it alleged on behalf of the plaintiff that the note was accepted by the company in payment of the premium, or that its existence was known to any person authorized on behalf of the company to extend the time of payment and upon whose knowledge of the situation alone could any waiver be predicated. Under the pleadings therefore it is wholly immaterial whether Cranston repudiated the note or not, or whether it was paid or not. It could not affect the case as the parties have made it by their allegations and denials.

5, 6. Of course, it would be competent for the defendant through its properly authorized officers to waive all those provisions respecting payment, and the authority of its agents, and to enter into a new contract of novation as is attempted to be pleaded in the reply whereby the company would agree to accept its agent's obligations to pay in lieu of the decedent's engagement, upon the latter agreeing to pay the agent. But such waiver must be pleaded in the complaint. It is well settled in this State that if a plaintiff relies upon such a change in the contract it must be stated in his initial pleading. The reason for this is that the plaintiff must aver the whole truth of his case at the outset and cannot be allowed to shift his position after having once challenged the

defendant to contest upon the grounds stated in his complaint. *Lillienthal* v. *Hotaling,* 15 Or. 371 (15 Pac. 630) ; *Deering* v. *Creighton,* 9 Or. 118 (24 Pac. 198: 20 Am. St. Rep. 800) ; *Bruce* v. *Phoenix Ins. Co.,* 24 Or. 486 (34 Pac. 16) ; *Long Creek Bldg. Ass'n* v. *State Ins. Co.,* 29 Or. 569 (46 Pac. 366) ; *Hannan* v. *Greenfield,* 36 Or. 97 (58 Pac. 888) ; *Young* v. *Stickney,* 46 Or. 101 (79 Pac. 345). As taught in *Shattuck* v. *Smith,* 5 Or. 125, "a contract cannot be predicated upon a separate agreement between different parties unless there has been a novation by which the new parties in the separate agreement agree to accept the performance in the first contract as a consideration for the second." Also, it is said in *Smith* v. *Foster,* 5 Or. 44, "the principle appears to be well settled that mere agreement to substitute another agreement or anything in lieu of the original obligation is void unless actually carried into execution and accepted as satisfaction." Granting in this case that Cranston agreed to pay the premium to Thurston, it nowhere appears that the defendant agreed to accept Thurston as its debtor or to release Cranston. Further granting that the defendant charged the amount of the policy to Booth, it does not appear that Cranston agreed to pay Booth. Finally, the stubborn fact remains that no payment has been shown nor any performance of the pseudo novations mentioned in the pleadings.

Several authorities are cited on behalf of the plaintiff to the effect that the delivery of a policy is evidence of payment of the premium. An analysis of these cases will show them to be properly divided into two classes. One is where the policy itself acknowledges the receipt of payment in some form or other, in which event the defendant company is estopped from denying the provisions of its own contract. An inspection of the policy in suit will show that it does not belong to the first class. The other class is where the policy was delivered

by an agent who was authorized to receive the premium, and payment was made to him, or some other transaction was agreed upon by the parties as a substitute for payment. In this latter case the precedents all rest upon the theory that the payment is thereby waived; but, as we have seen, the rule laid down in this State is that waiver must be pleaded in the complaint. Moreover, as we have already shown, Thurston was not authorized to receive payment, and the decedent, knowing that he was not equipped with the receipt mentioned in the policy, was aware of the defects of Thurston's authority to bind the company by accepting a note in place of the payment.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.          REVERSED.