[Argued January 26; decided February 26, 1894; rehearing denied.]

## BUSH v. ABRAHAM.

[S. C. 35 Pac. Rep. 1066.]

1. PROMISSORY NOTES— WHAT CONSTITUTES PAYMENT. — A stipulation in a promissory note that it is "to be paid only when payment becomes and is actually made" on a certain other designated note, does not require payment of the other note in money to make the former one due, for payment, though usually understood to mean a satisfaction in money, may be made in something else if the parties so agree.

2. PROMISSORY NOTE— SUBSTITUTED PAYMENT— RESCISSION OF SALE. — Defendant sold lands, receiving some cash, and notes for the balance, secured by mortgage on the lands. Thereafter the vendee became insolvent, and in consideration of a reconveyance of the property, and an order on a third person for a certain sum, and to save the expense of foreclosure, the vendor discharged the mortgage, and canceled the notes. *Held* a substituted payment of such notes, and not a rescission of the sale.

APPEAL from Douglas: H. K. HANNA, Judge.

This is an action by A. Bush of Salem against Sol Abraham of Roseburg to recover money on a real estate broker's contract. The complaint alleges, in substance, that at the dates specified therein, defendant became indebted to one F. J. Strayer in the sum of fifteen hundred dollars, for services rendered at the special instance and request of said defendant, in procuring the Glendale Lumber & Manufacturing Company, a private corporation, as purchaser for four thousand acres of land, and the mill and fixtures thereon, and that no part of the same has been paid except the sum of three hundred dollars; that subsequently the defendant, as a further payment thereon, made and delivered his certain promissory note to said Strayer, whereby he promised and agreed to pay him, one year after the date thereof, the sum of one hundred and seventy-five dollars, with interest at six per

cent per annum, and therein it is provided "That this note is subject to the following conditions: to be paid only when payment becomes due and is actually made on the note given this day by the Glendale Lumber & Manufacturing Company to Sol Abraham, for like term and interest, value received;" that the said note, before it became due, was transferred for a valuable consideration to plaintiff, who is now the owner and holder thereof, of which transfer the defendant was duly notified at the time it was made; that on the second day of May, eighteen hundred and ninety-one, the promissory note described in said condition was fully paid, canceled, and taken up by said company. As the other cause of action herein is identical, a statement of its facts is omitted.

The defendant, after denying the facts alleged in the complaint, set up as a further defense Strayer's misrepresentations as to the solvency of the company, and his reliance thereon, whereby he was induced to deed the said land and mill property to the company, and to accept certain notes therefor which are set out, and for which he took a mortgage on the property as security; the payment to Strayer of the three hundred dollars mentioned in the complaint, etc., and the execution of the notes sued on; the inability of the company, owing to its insolvency, to pay the fifteen-thousand-dollar note when it became due; and the acceptance of the reconveyance of the property to save himself from further loss on acount of such insolvency, whereby the transaction was rescinded without having received payment of said purchase-price notes, etc. The reply put in issue the new matter set up as a defense.

The record discloses that the testimony for the plaintiff tended to show that at the time of the purchase of the land, with the mill and fixtures thereon, the company also purchased of the defendant a stock of merchan-

XXV. OR.— 22.

dise, a store building, a lot of lumber and lath, to the amount of nineteen thousand six hundred and fifty-eight dollars and thirty-eight cents; that there was paid on the same twenty-two thousand six hundred and fifty-eight dollars and thirty-eight cents, and that no part of such sum had been returned to the company; that the several notes executed by the company to the defendant for such property had been taken up and canceled, which notes, so canceled, were admitted in evidence; that the notes forming the basis of the present action had been transferred to plaintiff by the said Strayer, and that he was the owner thereof. The testimony for the defendant tended to show that he had contracted with Strayer, who was a real estate agent, to negotiate a sale of the mill, plant, and land for the sum of sixty thousand dollars; that Strayer sent the company to him as a purchaser; that he sold the premises to it for the above sum, and received in part payment thereof the sum of three thousand dollars, and took a mortgage upon the premises to secure the payment of the remaining fifty-seven thousand dollars; that the defendant afterwards received on account of the purchase price the sum of six thousand dollars by accepting an order on one L. C. Beardsley for that amount, which order had not yet been paid; that these sums were all that he had ever received upon the purchase price of such property, and that he never returned any part thereof; that the defendant learned from Mr. Feller, the manager of the company, that it was insolvent and unable to pay the purchase-price notes as they became due, and that Feller, also, represented to him that he, like nearly all other stockholders, was unable to pay the balance due on his stock, and that the premises had been abandoned, and some of the machinery removed; that when the defendant learned that the company could not pay the balance of said purchase price,

and that it was insolvent, he took a reconveyance of the premises, and canceled the notes for the remainder of the purchase price.   It also appears that a year or so after such sale the company submitted to the defendant in substance the following proposition in writing, which was accepted by him: "That the defendant pay to the order of the company sixteen hundred dollars for sawed lumber, shingles, and timber in the mill yard, and the company reconvey to him all the real and personal property and contracts theretofore conveyed and assigned to it, together with all improvements thereon, free from incumbrance, except the mortgage given by the company for the purchase price;  three hundred and sixty dollars of the sixteen hundred dollars so to be paid to be applied in payment of the amount due on the five shares of stock held by defendant in the company, and he in consideration thereof to release and discharge the company from all claims, debts, or demands due him, discharge his mortgage of record, and dismiss all pending actions, suits, or proceedings, at his own expense;  the acceptance of such  proposition to operate to discharge the company and its stockholders from all obligations, debts, claims, and demands of every nature and description due the defendant, and the company to satisfy and discharge of record all liens against the property of the company as the same appeared of record, with the understanding that . the reconveyance of such property was not made for a full and valuable consideration, or any other than the mortgage held by the defendant thereon; and to avoid the trouble and expense incident to a foreclosure and sale of the property, which was not sufficient in value to meet the amount due on such mortgage; and with the further understanding that neither the company, its stockholders, or directors should hold any demand or claim whatever against its agent, L. C. Beardsley, but

that said Beardsley is indebted to the defendant in the sum of six thousand dollars and interest due thereon. There was a judgment for plaintiff from which defendant appeals.        AFFIRMED.

*Mr. Reuben S. Strahan* ( *Messrs. John W. Whalley, Martin L. Pipes, L. F. Lane,* and *C. A. Sehlbrede* on the brief), for Appellant.

*Mr. J. W. Hamilton,* for Respondent.

Opinion by MR. CHIEF JUSTICE LORD.

1. From the foregoing statement of the evidence offered under the pleadings, it will be seen that the main question was, whether there had been payment of the fifteen-thousand-dollar note, by reason whereof the notes upon which the present action is founded would become due and payable. The two notes upon which this action is brought are dated April third, eighteen hundred and ninety, are due one year after date, and each contains the condition that it is "to be paid only when payment becomes due and is actually paid on the note given this date by the Glendale Lumber & Manufacturing Company to Sol Abraham, for a like term and interest, value received." The contention for the defendant is that this note was never paid by the company, within the meaning of the condition to which the notes sued on are subject, and that, therefore, the sums of money specified in such notes never became due and payable. This contention embraces two propositions: (1) that the payment of the fifteen-thousand-dollar note contemplated by such condition is full payment in money of such note; and, (2) that the acceptance by the defendant, in consequence of the insolvency of the company, and to save himself from further loss and expense of a reconveyance of the

mill property in satisfaction and discharge of the pur-
chase-price notes, and other consideration named, was,
according to the terms of the agreement executed by the
company and himself, a rescission of the original sale of
such mill property, and not a substituted payment, or
accord and satisfaction of such purchase-price notes, and
hence, that the notes sued on never became due and pay-
able.   The condition is that the note is to be paid "only
when payment becomes due and is actually made" on
the company's note to defendant.   Payment, in a re-
stricted sense, is a discharge in money of a sum due.   As
usually understood, it means the transfer of money from
one person, who is the payor, to another, who is the
payee, in satisfaction of a debt.   In such sense, it would
not include an exchange or compromise, or an accord
and satisfaction, but would mean the full satisfaction of
a debt in money.   But in its general sense, payment is
the performance of an agreement, or the fulfilment of a
promise or obligation, whether it consists in giving or
doing.   The discharge of a contract or obligation in
money or its equivalent, with the assent of the parties,
would constitute payment.   It may be made in some-
thing else than money; in fact, anything that the credi-
tor will accept as payment.   It is a mode of extinguish-
ing obligations.   To constitute payment therefore, money,
or some other valuable thing, must be delivered by the
debtor to the creditor for the purpose of extinguishing
the debt, and the creditor receive it for the same pur-
pose:   18 Am. & Eng. Enc. title, Payment, p. 150.   And
a creditor may accept a part of his debt before the whole
is due in satisfaction of the whole, or, if the whole of the
money be due and there is an agreement to accept some-
thing else, though of less value, in satisfaction of a debt,
the agreement in such case would be a bar to a recovery
of the residue.   But an agreement to substitute any other

thing in lieu of the original obligation, is void unless mutually carried into execution: *Smith* v. *Foster*, 5 Or. 44. The note of the company for fifteen thousand dollars being negotiable, was payable in money by its terms and the law applicable to it, but, after such note became due, if the parties so agreed, its payment could have been made in something else than money as an equivalent, or something else than money, though of less value. The company might offer anything as a substitute for the money due on such note, and, if the defendant took it in payment and satisfaction of the same, such an agreement would be valid, and the note satisfied and discharged. As payment is but a mode of extinguishing a debt, it lies with the creditor whether he will accept something different from that which was owing as payment of his debt. So that, if the defendant chose to enter into an agreement with the company to accept something else than money, though of less value, in satisfaction and discharge of the company's notes, it would, when consummated, be a substituted payment, and as effectually extinguish such notes as though payment had been made in money. Such being the case, any agreement to that effect carried into execution by the parties would operate as payment of the note in question, within the purview of the condition to which the notes sued on are subject. We hold, therefore, that the payment contemplated by the condition need not necessarily be in money, but any mode which operated as payment by which such note was satisfied and extinguished, to which the defendant agreed.

2. The other proposition is that the agreement, in the light of the testimony, operated as a rescission of the original sale of the mill property, and not as substituted payment, or in the nature of an accord and satisfaction of the purchase-price notes, among which was the note

in question. Briefly, the undisputed facts show that the land and mill property were sold and conveyed by the defendant to the company for the consideration stated; that, at the time of the sale, there was paid the sum of three thousand dollars on the purchase price, and several notes given for the residue thereof, which notes were secured by mortgage on the property; that the company went into possession and operated the mill; that about a year thereafter it became unable to meet its obligations, and was, in fact, insolvent, whereupon it made certain written propositions to the defendant, which he accepted, whereby, in consideration of a reconveyance of the property, and to save the trouble and expense of foreclosure and sale, and in further consideration of an order on Beardsley for six thousand dollars, he agreed to discharge his mortgage of record, and to cancel and surrender the purchase-price notes which such mortgage was intended to secure, and to pay sixteen hundred dollars in the manner provided in such agreement. The testimony also shows that this agreement was carried into effect by the parties, and the agreement itself shows, as already stated, the consideration upon which it was founded. The defendant claims that the legal effect of these facts is to show that the transaction was a rescission of the original contract of sale of the mill property,—that the defendant simply took a reconveyance of the property and canceled and surrendered the notes,—and that, as a consequence, there was no payment or satisfaction of the notes in question, without which the notes sued on could not become due and payable, and that the trial court ought to have so charged the jury. The contract for the sale of the land and mill property was executed, and the company was the owner, and in possession of it, but was unable to pay the note in question when it became due. There was no doubt but what the property of the company was more

than sufficient to secure the payment of said note, but there were other purchase-price notes for large sums, which became payable subsequently, at different dates, and which such property would not be sufficient to satisfy and discharge. As the case stood, the defendant would be compelled to resort to foreclosure proceedings to enforce the payment of the note in question, and the other purchase-price notes as they fell due, while the property was unexhausted; and in view of the insolvency of the company, the delay, the trouble, and expense incident to such proceedings, and to save himself from further loss, an agreement was made and carried into execution whereby the defendant accepted, in satisfaction and discharge of the purchase-price notes, a reconveyance of the mill property, with other considerations named therein. This agreement evidently was intended to effect a complete settlement, but it makes no provision for the refunding of the three thousand dollars paid as part of the purchase price for such property; on the contrary, by the terms of such agreement, it permitted the defendant to retain the same, and the six-thousand-dollar order on Beardsley with the interest due thereon. As the original contract for the sale of the mill property was executed, there was no way to rescind it, except by an agreement that would operate as a rescission. The intention of a rescission is to put the parties in *statu quo*. To rescind a contract is to claim nothing under it. If the purpose of the agreement was limited to the cancellation or discharge of the purchase-price notes, in consideration of a reconveyance of the property, and in some way provided for the disposal of the three thousand dollars, it might be regarded, if this was all, as intended to place the parties in *statu quo*, and that the original contract for the sale of the mill property should be rescinded. But an agreement to accept something in lieu of money

in satisfaction of debt, when carried into effect, satisfies
such debt and discharges all right of action upon it.   An
overdue demand, whether liquidated or unliquidated,
may, by agreement, be discharged by payment of a thing
different from that contracted to be paid, although of less
pecuniary value; for instance, a thousand pounds by the
payment of a pepper corm:   *Pinuel's Case,* 5 Coke 117;
*Cumber* v. *Wane,* 1 Strange, 426, 1 Smith's Leading Cases,
601.   Although a money demand, liquidated and not .
doubtful, cannot be satisfied with a smaller sum of
money, yet if any other personal property is received in
satisfaction, it will be good, no matter what the value:
*Bull* v. *Bull,* 43 Conn. 455.   In such case the court will
not inquire into the adequacy of the consideration:
*Reed* v. *Bartlett,* 19 Pick. 273; *Fisher* v. *May,* 2 Bibb
(Ky.), 449, 5 Am. Dec. 626.   "A claim or demand," Mr.
Sutherland says, "may be satisfied by the party liable
delivering, paying, or doing, and the claimant accepting,
something different from that which was owing or
claimed, if they so agree.   It is a substituted payment.
When such agreement is executed,—carried fully into
effect,—the original demand is canceled, satisfied, ex-
tinguished.   It is thus discharged by what the law de-
nominates accord and satisfaction.   It is a discharge of
the former obligation or liability by receipt of a new con-
sideration mutually agreed upon":   1 Sutherland on
Damages (2d Ed.), § 246.   In support of such agree-
ments, if the consideration has some value, the law
regards it as sufficient without regard to its extent:
*Savage* v. *Everman,* 70 Pa. St. 315, 10 Am. Rep. 676.   The
fact that the mill property was of less value than the
amount remaining unpaid of the purchase-price notes is
not material, if its conveyance was accepted in satisfac-
tion and discharge of such notes.   In *Strang* v. *Holmes,* 7
Cow. 224, it was held that a conveyance of land, given in

satisfaction of money due on a bond, would operate as a release of the bond, if given and accepted in full satisfaction. SUTHERLAND, J., said: "The sufficiency of the satisfaction cannot be questioned. It was the conveyance of land which, like the gift of a horse, hawk, or robe shall be intended, might be more beneficial to the plaintiff than money, or otherwise he would not have accepted it in satisfaction." In *Eaton* v. *Lincoln*, 13 Mass. 426, PARKER, C. J., said: "The execution and delivery of the deed by the defendant, in pursuance of the agreement of the creditors, and the acceptance of that deed by their agent, and his sale of property afterwards, was a complete execution of the contract on both sides. These facts would have maintained the issue for the defendant upon a plea of accord and satisfaction." To constitute an accord and satisfaction there must be a satisfaction of the entire debt so as to completely extinguish it.

It would seem, therefore, in view of the conceded facts, that the agreement made and executed by the defendant and the company was not a rescission of the contract of sale, but was in effect a substituted payment. It embraced new and additional considerations, and, when it was carried into effect, operated as payment of the entire debt,— not only the fifteen-thousand-dollar note then due, but the other purchase-price notes which were not due. This being so, the condition of such property, whether it was decreased in value by cutting off timber, or enhanced in value by putting in new machinery, was not material, but collateral. It is the right of a party to accept anything that may be offered in payment and satisfaction of his demand, and when he does so, the transaction is closed, and no inquiry into the condition of the property, or whether the party made or lost by the agreement, can be material, in the absence of fraud. The fact alone that a part of the consideration for the agreement was to pro-

tect the defendant from further loss, and to avoid the expense of legal proceedings, would be sufficient to support it. All such matter, therefore, in the form of exceptions to different questions, was immaterial and collateral to the issue, and could not affect the right of the broker to his commissions. There is no pretense but what he furnished a purchaser who was acceptable to the defendant, or that the defendant did not make his own terms with such purchaser as to the time of payment. Besides, the record discloses that the defendant Beardsley testified fully on the subject of the condition of the property, although immaterial. We do not think, therefore, that in any view such questions were material, or that their exclusion can be considered as error.

It is claimed that the court erred in not giving an instruction asked by the defendant to the effect that if the jury believed that " at the time the first note for fifteen thousand dollars, made by the company to the defendant became due and payable, the same was not paid by reason of the insolvency of the company, and that, in order to save himself from further loss, the defendant took back the property from the company, the sale of which was negotiated by Strayer, such reconveyance of said property is not payment of the fifteen-thousand-dollar note, and the plaintiff is not entitled to recover. The failure of the company to pay the note of fifteen thousand dollars is a complete bar to plaintiff's recovery in this action." It is insisted by counsel that this instruction embodies a correct statement of the law. He argues that " the writing sued on was payable on an expressed condition, to wit, the payment of this note for fifteen thousand dollars. If this note was not paid, it was the duty of the court to declare as a matter of law that the money mentioned in the writing sued on had not become due and payable." But we think as a matter of law,

that the agreement which was entered into and carried into effect by the parties, operated as a substituted payment of the note in question, which was payment within the meaning of the condition; and, hence, the notes sued on became due and payable. There was no failure to pay, for when the defendant accepted the company's offer, and the arrangement was completed, it operated as substituted payment. This being so, the defendant was paid the note in question within the meaning of the condition. Nor is there anything in the case of *McPhail* v. *Buell*, 87 Cal. 115, 25 Pac. 266, cited by counsel, opposed to this result. There the agreement was that the defendant would pay the plaintiff his commissions when the vendees paid to him (the defendant) the sum of twenty thousand dollars on account of the purchase price, and executed to him their notes and mortgages for the balance. The purchasers executed their notes and mortgage, but failed to pay the twenty thousand dollars, and the defendant was compelled to take back the property. The court necessarily held that the failure to pay the money was a complete bar to any claim for commissions.

It is also claimed that the court erred in not giving the following instruction for the defendant: "Plaintiff not having pleaded a waiver of the conditions specified in the contract sued on, he cannot upon the trial rely upon waiver of such condition." The plaintiff is not relying upon a waiver of such condition, but claims that a right of action accrued upon the note for the commission of his assignor when the defendant accepted anything different as payment from that contracted for, by which the note in question was satisfied and extinguished. The facts, as well as the agreement, show that the company did a great deal more than merely surrender the property to the defendant, hence the objection to the second instruction given by the court is not erroneous. It

is not necessary to prosecute our inquiries further in respect to the other exceptions to the instructions, as our view of the legal effect of the agreement is that it operated as a substituted payment, and not as a rescission of the original contract of sale. Besides, there is no sort of doubt or pretence but what the mill property was more than sufficient in value to pay the full amount of the note in question, and such being the case, if the defendant chose to retain payments made on such property, and accept a reconveyance of it in satisfaction and discharge, not only of such note then due, but of all the purchase-price notes which were payable subsequently at different dates, in order to avoid the delay and expense of foreclosure and sale, certainly such transaction ought to be deemed payment of the note in question, as between the plaintiff and defendant, within the meaning contemplated by the condition, so as to render the notes sued on due and payable, and the plaintiff's right of recovery maintainable. As these views of the law are decisive of the case, it results that the judgment must be affirmed.

AFFIRMED.