Goldsberry v. Thomas.

W. H. GOLDSBERRY et al., Respondents, v. J. R. THOMAS, Appellant.

Kansas City Court of Appeals, April 6, 1914.

1. **REAL ESTATE BROKERS: Purchaser: Contract: Compromise.** A real estate broker employed by the owner of a farm to exchange it for other land and a sum of money, produced one able, ready and willing to exchange paying the difference in money. A contract to that effect was made. Then the party produced by the agent refused to carry out the contract by making a deed, etc.; whereupon the owner settled with him and cancelled the contract on his paying the owner the damages agreed upon. It was held that the broker had earned his commission.

2. ——: ——: ——: **Settlement: Commission: Damages.** A real estate broker for an agreed commission of $1,000 procured a purchaser for his principal's farm and a contract of sale and exchange was made by the owner and the party, with a forfeit of $1,000 for failing to carry it out. Afterwards the party refused to carry out the contract and a controversy was imminent. Then, in view of this, the broker agreed with the principal that if the sale was consummated without suit, he would charge $1,000 commission; if it was consummated after a suit he would charge $500; but if the principal settled by accepting the $1,000 forfeit money he would only charge $200. The principal would not accept the $1,000 forfeit, and finally settled for $1,750 damages. It was held that the broker was not obliged to accept the $200 as his commission and that he was entitled to the $1,000 agreed upon before the controversy arose.

3. ——: ——: **Able, Ready and Willing to Buy: Specific Performance: Damages.** A real estate broker who produces

a purchaser for his principal who is able, ready and willing to buy or exchange is entitled to his commission even though the deal is not consummated. For the principal may have specific performance, or, if the purchaser has disabled himself from performing, he may recover damages.

4. ———: ———. If a real estate broker has produced a purchaser able, willing and ready to purchase, and a contract is entered into and then he refuses to carry out the contract and the broker's principal settles the damages with him, the broker is entitled to his commission.

5. ———: **Dual Agency: Consent: Instructions.** A real estate broker owes his exclusive interest to his principal and if, without the consent of his principal, he is found to be in the employ of the opposite party, it is such character of fraud and duplicity as will prevent his recovery of a commission. And an instruction which omits to submit the hypothesis of the principal's consent is erroneous.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*N. T. Gentry* and *McBaine & Clark* for appellant.

*Harris & Finley* for respondents.

ELLISON, P. J.—Plaintiff's action was instituted to recover one thousand dollars claimed to be due them as real estate agents for bringing about a sale, or exchange, of defendant's land. They had judgment for the full sum in the circuit court.

Defendant was the owner of a large farm consisting of 720 acres in Boone county which he desired to sell. To that end he procured a printed description of it which he placed in the hands of several real estate agents in Columbia. In this was a statement that he would allow a commission of two and one-half per cent. One of these was left with plaintiff Goldsberry, who afterwards found a man named Davis living in Nodaway county, Missouri, close to the Iowa line, who owned a farm of 400 acres in Iowa, which he proposed to trade

for defendant's land. Plaintiff and defendant then agreed that for trade or exchange, instead of sale of the land the commission should be $1000. Defendant and plaintiff went to Iowa to look at the farm, but the trip resulted in a disagreement between defendant and Davis.

Shortly afterwards, Davis communicated to plaintiff Goldsberry that he had another Iowa farm consisting of 165 acres, which he would put in the trade for defendant's land. Defendant then went to Iowa to look over the land and he and Davis came to an agreement (20th January, 1913) of exchange or purchase, the terms of which were reduced to writing and signed by each.

Among these provisions is the following: "In order to show their good faith each party is to execute to the other his promissory note in the sum of One Thousand Dollars due on March first, 1913, a failure of either party (is) to render the note given by him due and payable and the amount of said note to be considered as damage for their failure to comply with this contract and value received clause in same to be legal and binding."

The word, "is" we have inserted in parenthesis as a clerical omission.

Davis, afterwards failed and refused to carry out this contract which resulted in a settlement between them at Maryville, Missouri, evidenced by a written agreement dated the 28th of February, 1913, whereby for the payment by Davis to defendant of $1750 the "controversy between the parties is hereby compromised and settled in full and said contract is annulled and cancelled as to all its terms."

Before starting to Maryville for this settlement, defendant and plaintiffs talked it over, when the latter agreed to and signed and delivered to defendant the following paper, which may be termed a modification of their first agreement, or a new agreement to

meet the different conditions which might arise, or result from the conference between Davis and defendant, viz.:

Columbia, Mo., Feby. 24, 1913.

"Denham-Goldsberry Compromise in the Thomas-Moreland-Estes Land Deal with Geo. Fred Davis.

First Proposition: We, the undersigned agents, agree that if the said Thomas-Davis land deal goes through without litigation we expect $1000 commission, as agreed, less the travelling expenses of Thomas and Moreland on trip to Mt. Ayr, Iowa.

Second Proposition: If said Thomas enters into litigation to consummate the deal and is successful in the suit, we agree to accept $500 as full settlement of our commission on said deal.

Third Proposition: If said Thomas decides to accept $1000 as a forfeit on the above deal then we agree to accept $200 as full settlement of commission on the above deal.

J. C. DENHAM,

W. H. GOLDSBERRY."

It will be noticed that neither of the three propositions of this agreement exactly meet the terms of the settlement between Davis and the defendant. The third or last one comes nearest; but as defendant received $1750 instead of $1000, it is evident that he got damages instead of the mere $1000 forfeit provided for in the original contract of exchange. Now a real estate agent who procures for the owner a purchaser for land who is able, ready and willing to buy, is entitled to his commission. [Gelatt v. Ridge, 117 Mo. 553; Park v. Culver, 169 Mo. App. 8.] For, if the purchaser without the fault of the owner, refuses, or fails to carry out his contract he may be compelled to do so by suit for the price or specific performance. And if for any reason, not the fault of the owner, specific performance cannot be had, he may hold the purchaser

in damages if he chooses. In either of these events the agent has earned his commissions. In this case there was evidence tending to show that Davis could not be held to specific performance because of a mortgage and that his wife was no party to the contract and could properly refuse to join in a deed; but that would not relieve him from liability in damages, and there was evidence that Davis was able to respond in damages, And as we have seen, defendant did demand and receive damages from him.

From the foregoing it will be seen that we are not in accord with defendant's theory of defense; the effect of which is that if the sale or trade is not consummated by the parties then no commission is earned. That is not the test in those instances where a purchaser able and willing to buy is produced, and where, if a contract is made, specific performance may be forced by the principal, or, if not, where he may obtain compensation in damages from such party. Defendant reiterates that this sale "did not go through." Certainly it did not; but it was for the reason that he let the purchaser off by a settlement of the damages. [Love v. Owens, 31 Mo. App. 501, 511.] That should not prejudice plaintiff's right. [Parker v. Walker, 86 Tenn. 566; Ward v. Cobb, 148 Mass. 518.]

There was evidence to show that plaintiffs agreed to take defendant's note for the commission and to wait on him until he sold the farm in Iowa to be received from Davis. Defendant insists that such understanding meant that no indebtedness arose from him to plaintiffs until he sold the farm. There is no proper basis for this insistence. The understanding merely amounted to an agreement to wait a reasonable time to sell it. The indebtedness did not depend upon a sale. [Crooker v. Holmes, 65 Maine, 195; Nunez v. Dautel, 19 Wall. 560; Randall v. Johnson, 59 Miss. 317.] This view of the law is borne out by Ubsdell v. Cunningham, 22 Mo. 124; and as defendant himself

adjusted the matter by releasing Davis he is in no situation to say that such time had expired.

We think it is clear, from the whole evidence, that the expenses of the trip to Iowa by defendant and Moreland were to be deducted from the commission. It was therefore error to direct the jury that if they found for plaintiff to do so in the sum of $1000.

It appeared in this case that plaintiffs were acting in a dual capacity and that they were to obtain compensation from Davis for representing him in the transaction. That of itself would have been enough to destroy any right to recover from defendant, unless it was known to defendant and consented to by him. [Corder v. O'Neil, 207 Mo. 632; De Stieger v. Hollington, 17 Mo. App. 383; Lipscomb v. Mastin, 142 Mo. App. 228, 233; Wadsworth v. Adams, 138 U. S. 380.]

An agent's relation to his principal is of such character as to call for his exclusive care of his principal's interest. If it be found that he has been in the employ of the opposite party, it is a discovery of such unpardonable duplicity as to disentitle him to the aid of the court in an action for reward for such service. It is a position only permissible when known and consented to by both parties and this should be unequivocally stated in instructions to the jury. In this case instruction number 3 for plaintiffs submitted the hypothesis that if defendant knew of the double employment "before closing the trade" then it was no defense to the action. It is not pretended that defendant knew of it at first, though he admitted that he "surmised" it, before the trade was closed. There is no evidence except circumstances, that he consented. He not only refused to say he consented, but denied that he knew it. At most it was a question for the jury. The instruction should have also submitted the hypothesis of consent. [Corder v. O'Neil, 207 Mo. l. c. 645, 646; Dennison v. Gault, 140 Mo. App. 444; McClure v. Clement, 161 Mo. App. l. c. 29.] Though, in cer-

tain circumstances knowledge would be an element from which consent could be found.

The judgment will be reversed and the cause remanded. All concur.