## IN THE

# SUPREME COURT

OF

# OREGON.

Argued at Pendleton May 7, affirmed May 28, 1918.

## SCHIRBER *v.* GREENE.

(173 Pac. 256.)

**Payment—Application by Agreement.**

1. Where owner of land encumbered with two mortgages, one of $4,000 and one of $5,000, sold the same, with agreement with the purchaser to execute a mortgage of $10,000 to pay off the two mortgages and apply balance to an unsecured debt, but agreed with mortgagee in new mortgage, of which agreement the purchaser had no notice, to pay off one mortgage and apply balance to unsecured debts, leaving one mortgage outstanding, except for payment of any balance of the $10,000 on the unpaid mortgage, there was no contractual relation between mortgagee and purchaser, so as to establish plea of payment by the purchaser of the whole of the unpaid mortgage.

[As to application of payments, see notes in 13 **Am. Dec.** 505; 14 **Am. Dec.** 694; 96 **Am. St. Rep.** 44.]

From Morrow: GILBERT W. PHELPS, Judge.

In Banc.

This is a suit in the usual form to foreclose a mortgage given by Greene and his wife to the plaintiff, covering certain lands in Morrow County, as a security for the payment of their $5,000 note of January 30, 1911, payable to the order of plaintiff six months after its date, with interest at 8 per cent per annum. Gritman and his wife are made defendants under an allegation to the effect that they have or claim some estate in the mortgaged premises, but that the same is subsequent

in time and inferior in right to the plaintiff's mortgage. Greene and his wife filed one answer and Gritman joined his wife in another. They all admit the execution and delivery of the note and mortgage described in the complaint. The Greenes affirmatively state that they themselves had paid the note and mortgage in full prior to the commencement of the suit, and that the plaintiff had agreed to discharge the same. The Gritmans answer that the instruments in question were paid and satisfied in full, without stating by whom that result was effected. The new matter in both answers was traversed by the reply. From a decree personal against Greene and his wife for the sum of $1,950.35 with interest at 8 per cent per annum from March 6, 1914, and for $150 attorneys' fees and costs, and foreclosing the mortgage for these amounts, the Gritmans alone appealed.                    AFFIRMED.

For appellants there was a brief over the names of *Mr. Lawrence A. McNary* and *Mr. R. A. Imlay,* with an oral argument by *Mr. McNary.*

For respondent there was a brief over the name of *Messrs. Smith & Mack,* with an oral argument by *Mr. M. E. Mack.*

BURNETT, J.—It is disclosed by the record that Greene was the owner of the land in question, subject to a first mortgage securing $4,000 and interest to the Traders' National Bank of Spokane, Washington, and a second mortgage of $5,000 in favor of the plaintiff, upon which this suit is based; and was negotiating with Gritman with a view of selling the realty to the latter. Both these mortgages had matured. Greene was also indebted to the plaintiff upon three unsecured promissory notes, one for $1,000, a second for $500 and a third

for $100. Gritman was unwilling to take the land subject to matured encumbrances, but was willing to assume such a lien to the extent of $10,000. Under these circumstances Greene applied to the plaintiff to take up the $4,000 mortgage to the Traders' National Bank and release his own $5,000 mortgage, taking in lieu thereof one for $10,000 on the property and extending the time for payment so that Gritman would take the estate thus burdened. Schirber's contention is that a condition of the ensuing agreement was that Greene should pay in full his unsecured indebtedness, before the former would release his $5,000 mortgage or take up that of the bank. The contention of Gritman is that nothing was said about the unsecured indebtedness, and that Schirber represented that the $10,000 mortgage would clear all claims against the land. The mortgage to secure the $10,000 was dated March 6, 1914. The date of its record is not disclosed by the testimony, but it does appear that designedly it preceded the record of the deed from Greene to Gritman.

There is testimony on behalf of the defendants to the effect that Schirber was present in Spokane when Greene and the representatives of Gritman, who was not there in person, were negotiating about the sale of the land to the latter, and then and there represented that $10,000 would cover all claims against the property. All agree, however, that he did not at the time satisfy the mortgage in suit. He denies and witnesses for the defendants affirm that he represented that he did not have with him either the mortgage or sufficient data by which to frame a satisfaction piece, but promised to send the same to Greene at a later date, and accordingly the matter was left open. Schirber testified to the effect that he told them he would satisfy the mortgage when Greene paid up all arrearages and de-

livered the notes and mortgage for the $10,000 to be embodied in the new encumbrance. From the documentary evidence on file, including the check drawn by Schirber to satisfy the Traders' Bank mortgage, as well as by the testimony of Schirber and Greene, it is well established that the final settlement between those two did not occur until May 28, 1914, at which time they calculated the interest on the Traders' Bank mortgage, on the note and mortgage in suit, as well as upon the three unsecured notes already mentioned, amounting in all to $11,950.35; from which they deducted the $10,000 represented by the new mortgage, crediting upon the note and mortgage in suit the overplus of $10,000 remaining after applying the same to the satisfaction of the other outstanding obligations mentioned.

The only question raised by the pleadings is the payment of the note and mortgage in suit. This the defendants affirm, assuming the burden of proof, and the plaintiff denies. Although the Gritmans, at least, had an opportunity, when they filed their answer, to plead against Schirber an estoppel to the effect that he stood by and saw them purchase the land encumbered by the two mortgages and represented to them that they constituted all he claimed against the Greenes and would be satisfied by the $10,000 mortgage to be placed thereon by Greene and that he would discharge the two mortgages on receipt of the new one, which he failed to do, yet no estoppel was stated in the defendants' pleading.

1. The determination of the suit must depend upon the solution of the issue of payment. It is plain that Greene and Schirber regarded the new mortgage for $10,000 as payment of so much money, within the meaning of *Bush* v. *Abraham*, 25 Or. 336 (35 Pac. 1066), and *Cranston* v. *West Coast Life Ins. Co.*, 63 Or. 427 (128

Pac. 427), cited by the defendants Gritman. The question is one of application of payment. That was the proper subject of contract between Greene and Schirber. They concur in stating it was agreed as a condition of the latter's releasing the $5,000 mortgage and taking up the Traders' Bank mortgage that Greene should discharge the unsecured indebtedness. Both agree that this was not done except in the settlement of May 28th. They both testify, likewise, that at that adjustment the $10,000 represented by the new mortgage was applied to the unsecured indebtedness and the Traders' Bank mortgage, and that the residue was credited on the note and mortgage in suit. That was what was actually done, whatever the previous agreement may have been between the actual debtor and creditor, Greene and Schirber. Whatever may be said of the initial agreement on that subject, it was clearly executory and was not fulfilled. Gritman was not a party to either of the stipulations between Greene and Schirber and is in no situation to rely upon the first as an application of payment, for the very reason that it was not carried out. There was no contractual relation between Schirber and Gritman, hence as between them there is nothing to establish the plea of payment made by the latter.

The legal effect of the transaction was that Gritman took the land subject not only to the $10,000 mortgage but also to the unsatisfied prior mortgages, knowingly leaving it in the power of Schirber to enforce the payment at least of the one for $5,000 which he owned. Schirber found Greene equipped with the $10,000 mortgage and with power to appropriate it to whatever he chose of his indebtedness, and as against the plea of payment had the right to agree with Greene to apply

it to the unsecured indebtedness, which it appears they did, resulting in the discomfiture of Gritman.

It is true, as the authorities cited by Gritman show, that if indeed the payment had actually been applied to the discharge of the two mortgages upon the land, the one to the bank and the other to Schirber, neither Greene nor Schirber could afterwards change the application to the damage of Gritman, the subsequent purchaser of the land. But this is not what happened. At best there was between Greene and Schirber an executory contract which might have thus resulted if it had been observed, but it was never carried out and the parties to it substituted and performed a new agreement by which the application was made to the bank's mortgage and the unsecured indebtedness due from Greene to Schirber, and the balance credited on the note in suit as stated.

There is practically no dispute as to what was in fact done by the parties. Tested by the canon of the pleadings, the defense of payment as distinguished from estoppel is not the conclusion to be drawn from the facts. The plea of payment not having been sustained, the result is that the decree of the Circuit Court must be affirmed.                                   Affirmed.