make it a part of the bill, but it is not attached. The corrections having been made after notice to, and with assent of, counsel, we have treated the affidavit as a part of the bill of exceptions and amendment thereto in arriving at our conclusions, and we order that it be attached thereto. Section 11572-*a*, General Code.

For the reasons indicated, there is no error apparent on the face of the record, and the judgment will be affirmed.

*Judgment affirmed.*

CULBERT and RICHARDS, JJ., concur.

---

THE BRUNER-GOODHUE-COOKE-CRANZ AGENCY CO. v. SMITH.

*Brokers—Commission note to be void upon tenant's failure to perform—Lessor, agreeing to modification of full performance, liable.*

A performed services in negotiating a lease of B's premises to C; thereafter A and B agreed upon the value of such services, and B gave to A a promissory note therefor, payable in one year, with interest; said note contained the provision that it should be null, void, and of no effect if C "fails to perform said lease and all the terms, covenants and conditions thereof" for the year preceding the due date of said note; during said year C did not perform all of the terms, covenants, and conditions of said lease, but B, after such failure, without the knowledge or consent of A, for a consideration, agreed with C upon a modification of the terms of such lease, by which B accepted less than full performance and released C from the consequences of such failure. *Held*: That any performance which B, by agreement with C, accepted as

performance, was not a failure of performance within the meaning of said forfeiture clause of said note.

(Decided March 8, 1927.)

ERROR: Court of Appeals for Summit county.

*Messrs. Waters, Andress, Southworth, Wise & Maxon,* and *Mr. Paul C. Weick,* for plaintiff in error.

*Mr. Chalmers M. Hamill,* for defendant in error.

WASHBURN, P. J. Plaintiff in error, the Bruner-Goodhue-Cooke-Cranz Agency Company, sued defendant in error, Susan B. Smith, on two promissory notes, which are alike in all respects except the due dates and the dates referred to in the last lines thereof. A copy of the first note is as follows:

"$1,000.00      Akron, Ohio, March 31, 1923.

"On or before April 1, 1924, after date, for value received, I promise to pay to the order of the Bruner-Goodhue-Cooke-Cranz Agency Company, at the office of the Dime Savings Bank, Akron, Ohio, one thousand dollars, with interest thereon at the rate of six per cent. (6%) per annum, payable annually.

"This note is one of a series of four (4) notes, all of like date, tenor and effect, except as to maturity, given to evidence the balance due the payee hereof as a commission for negotiating and securing the execution and delivery of a 99-year lease of the premises of the maker hereof located on South Main street in the city of Akron, Ohio; it being agreed between the maker and the payee hereof that this note shall be null, void, and of no

effect if the lessee of said premises, or its assignee, fails to perform said lease and all of the terms, covenants and conditions thereof for the year ending March 31, 1924.      Susan B. Smith.''

Plaintiff alleged that the defendant had waived and excused and agreed to a modification of some of the terms of said lease, and that, except so far as the full performance of said lease by the lessee thereof had been waived or excused by the defendant, said lessee had duly performed each and all of the terms and provisions which according to the terms of said lease were to be performed by said lessee, by reason whereof ''the defendant has waived said provision in said note that the same would become void if said lessee failed to perform said lease and is barred and estopped from claiming that the same is void.''

Issues were joined, and a jury was waived. The case was tried and determined upon the question of whether the defendant's conduct had been such as to preclude her from justifying her refusal to pay on the ground that the notes were void because said lessee had not performed the terms, covenants, and conditions of said lease. Judgment was rendered in favor of the defendant, and the plaintiff prosecutes error.

The material and controlling facts are not in dispute. Plaintiff company negotiated a 99-year lease between the defendant and the Foster Supply Company, a corporation with practically no assets, which fact was well known to the defendant, as was the fact that the premises were to be sublet for five years to the Foster Office Supply Company, a corporation with an established business, which was to and did guarantee the performance of the

99-year lease for the first five years. The facts were all known and understood and freely agreed to by the defendant, and all the papers completing the whole transaction were executed in the early part of 1923, the lease to begin April 1, 1923.

The defendant was to pay plaintiff for its services in negotiating said 99-year lease, and on March 31, 1923, the amount to be paid for such service was finally compromised and fixed at $5,000, and in discharge of that obligation defendant paid plaintiff $1,000 and gave to plaintiff four promissory notes of $1,000 each, payable in 1, 2, 3, and 4 years, and in this suit it is sought to collect the first two notes; the others not being due when the suit was begun.

After receiving said notes, *plaintiff had no part in and no knowledge* concerning the subsequent dealings and transactions between the defendant and the Foster Supply Company and the Foster Office Supply Company. For convenience the former company will be referred to as the lessee company and the latter company as the guarantor company.

In accordance with the terms of said 99-year lease the lessee company deposited $5,000 with the defendant "as a continuing security for the faithful performance of this lease by the lessee, and the lessor shall be under no obligation to keep said sum intact, but shall be liable to the lessee for interest thereon at the rate of 6% per annum, payable upon the first day of April of each and every year, as long as said sum remains in the hands of the lessor as provided herein." While the lessee did not have the right to have said sum applied upon rent and taxes and other obligations under

the lease, if it was so applied by the defendant the lessee was obligated to restore same so as to maintain said sum in the hands of the lessor.

On April 1, 1923, the lessee company took possession under its 99-year lease, and the guarantor company took possession under its sublease, and has ever since occupied said premises; the lessee company paid the stipulated rent at the rate of $15,000 per year up to January 1, 1924, but it failed to pay the January, February, and March rents. On March 10, 1924, the defendant accepted three notes, representing the January, February, and March rents, payable in 30, 60, and 90 days, signed by the lessee company and the guarantor company upon their agreeing to pay $200 per week, to be applied on said notes. The first note was paid and a small part of the second, but the April and May rents were not paid, and on May 29, 1924, by the following offer and acceptance, the defendant and the lessee company entered into an agreement modifying the lease contract:

"Akron, Ohio, May 29th, 1924.

"Mrs. Susan B. Smith, Akron, Ohio—Dear Mrs. Smith: By reason of the bankruptcy of the Foster Office Supply Company, the Foster Supply Company finds itself unable to carry out the 99-year lease on your property located at 188 to 190 South Main street in the city of Akron, Ohio, wherein the Foster Supply Company is the lessee. We feel, however, that if the lease is modified somewhat this company will be able to go forward and maintain the lease. With that end in view we propose that the existing 99-year lease be modified in the following respects only:

"1. That the reservation of the rent be modi-

fied so that the yearly rent for the balance of the first four years beginning July 1, 1924, and ending March 31, 1927, shall be at the rate of $12,300.00 a year payable in equal monthly installments in advance on the first day of each and every month, as follows:

"During the entire period beginning July 1, 1924, and ending March 31, 1927, the lessee shall have no right to collect or receive any part of the rentals which may accrue under the Weiss & Weisberg lease for that portion of the premises occupied by them and used in the business known as the 'Ladies Shop,' and that the lessor shall have absolute and exclusive right to collect and receive all such rental under said Weiss & Weisberg lease, provided that all such rentals so collected by the lessor shall be applied upon the rental provided for in said 99-year lease as modified. In addition to the rental from the Weiss & Weisberg lease the lessee shall pay in advance upon the first day of each and every month during said period beginning July 1, 1924, and ending March 31, 1927, the sum of $300.00.

"2. That Article II of said 99-year lease be modified in such manner that during said period beginning July 1, 1924, and ending March 31, 1927, in lieu of the payment of taxes which may be levied, charged, assessed or imposed upon the premises, the lessee shall pay to the lessor on the first day of each and every month of said period beginning July 1, 1924, the sum of $200.00, provided that if the semiannual taxes amount to a sum greater than the aggregate payments of $200.00 per month the lessee shall pay to the lessor prior to the last day for the payment of taxes a sufficient

sum of money to raise the aggregate amount of said $200.00 monthly payments to an amount sufficient to pay the taxes in full.

"3. That Article III, Section 2, of said 99-year lease be modified so that the lessee shall release all claims to the $5,000.00 deposited by the lessee as security for the performance of said lease and said $5,000.00 shall become the absolute property of lessor free and clear of any liability whatsoever to the lessee for the payment of interest thereon and all other claims of whatsoever kind or nature which the lessee may have against the lessor for the same.

"4. That without modification of the lease in any respect the lessor will assume and pay one-half of the expense of putting in the new parts and repairs on the elevator equipment necessary to put the same in good working condition.

"In addition to the foregoing modifications of the lease we ask that you agree to the following:

"1. That the 99-year lease as modified shall be effective for the period beginning July 1, 1924, and ending March 31, 1927, at the expiration of which period the lessee shall have the option to terminate the lease as a whole or to proceed with the lease in accordance with its terms; the lessee shall notify the lessor in writing of its election not later than January 1, 1927.

"2. The lessor shall release the Foster Office Supply Company, or its successors, from the guaranty on said 99-year lease and from all liability thereon and shall agree not to file any claim whatsoever against the estate in bankruptcy of said the Foster Office Supply Company.

"3. The lessor shall return to the Foster Office

Supply Company, or its successors, notes now held by the lessor covering back rental in the sum of approximately $2,300.00.

"Very truly yours,

"The Foster Supply Company,

"By E. C. Foster, President.

"The undersigned lessor referred to in the foregoing proposal agrees to accept said proposal of the Foster Supply Company upon the express condition that in the event that the Foster Supply Company is unable to carry out all of the terms of the above proposal the lessor shall never be deemed to have waived any right whatsoever which it now has under said 99-year lease, and that this instrument shall never be construed or considered as a waiver of any right whatsoever which said lessor may now have or hereafter acquire by reason of said 99-year lease.     [Signed] Susan B. Smith.

"Witnesses:

"L. Korey.

"E. S. Benedict."

This arrangement was carried out and the lessee company is still in possession of the premises, and, according to the evidence, intends to exercise its option and restore the 99-year lease in all of its original terms. By this arrangement the defendant accepted a reduced rental for a time, but received said $5,000 deposit made by the lessee company and the same became defendant's "absolute property," and she no longer was required to pay interest thereon, which, under the lease, she might have had to pay until 1960.

The substituted performance may not be as valuable to the defendant as would have been the performance of the original lease, but without the

knowledge of the plaintiff the defendant agreed to such modification; she still has her tenant which the plaintiff procured and for which service she agreed to pay plaintiff.

The note in question was not a promise to perform upon the happening of a future event, where the event is either merely selected as a means of fixing the time of performance or such event is a condition precedent to any liability, but it is a plain, straight promise to pay an admittedly existing debt at a particular time, with an added provision that, if the conditions of a certain lease are not complied with during a certain period, such promise should then be null and void and of no effect.

Courts will not ordinarily construe stipulations in a contract as conditions precedent, unless it plainly appears that such was the intention of the parties.

A condition subsequent presupposes an existing obligation which is to be defeated or forfeited if the condition is not fulfilled. Forfeitures are not favored either in law or equity, and provisions for forfeitures are strictly construed. Under this contract a substantial performance by the lessee was all that was required. If the lessee had paid the monthly rentals on the 10th instead of on the 1st day of each month, that would not have been strictly in accordance with the lease, but if plaintiff had accepted same she could not claim that plaintiff's note was void because the rent had not been paid when due; if the lessee had paid a part only of the rent and the defendant had forgiven the balance and accepted the part paid as a compliance with the lease, she could not avoid plaintiff's note on

the ground that the rent had not been paid; in fact, any performance which the defendant, by agreement with the lessee, accepted as performance would not be a failure of performance within the meaning of the forfeiture clause of plaintiff's note.

If a forfeiture depends upon the nonperformance of a third party, the one claiming such forfeiture is estopped from doing so if he has prevented performance or has accepted something else in the place thereof.

The conditions referred to were not to be performed by plaintiff, to whom the promise was made, but were things to be done by a third party—the lessee of the premises—and they were things for the doing of which plaintiff was in no way responsible. Under such circumstances the defendant could not, without the knowledge or consent of plaintiff, waive the performance of the covenants and conditions of the lease, agree that something else should be done in the place thereof, and still insist upon a forfeiture because the things provided for in the lease had not been done. *Bush* v. *Abraham,* 25 Or., 336, 35 P., 1066; *Dermody* v. *New Jersey Realties, Inc.,* 101 N. J. Law, 334, 128 A., 265; *Goldsberry* v. *Thomas,* 178 Mo. App., 334, 165 S. W., 1179; *Webber* v. *Holmes,* 174 Mass., 410, 54 N. E., 872; *Suter* v. *Farmers' Fertilizer Co.,* 100 Ohio St., 403, 126 N. E., 304.

When the January, February, and March rents were not paid, defendant did not proceed under the forfeiture clause of the original lease and terminate same after giving 60 days notice; on the contrary, after extending the time for the payment of

same, she released her claim upon the assets of the guarantor company, which, if enforced, might have resulted in the collection of the balance of the first year's rental and the substantial performance of the original lease for that year and possibly subsequent years.

The defendant had a right to make any modification of the lease which she might deem best; by doing so she agreed that something other than that stipulated in the lease should be accepted and released the lessee from the original performance. Having agreed to a substituted performance she cannot, for the purpose of forfeiting plaintiff's claim, insist upon the original performance.

The lessee's failure to pay the January, February, and March rents was a technical failure to comply with the original terms of the lease, which on March 10th had not been modified, but on that day, and before plaintiff's first note was due, defendant took notes extending the time of the payment of said rent into the second year of said lease, and, before all of said rent notes became due, defendant agreed to a modification of the terms of the lease, and then for a consideration surrendered the rent then due, which was represented in part by the rent notes which were still unpaid; she thereby extended the time of the first year's performance and then released the lessee from a part of such performance, and she did finally accept what was paid as a performance on the part of the lessee and did not forfeit the lease.

The judgment entered by the trial court in favor of the defendant is contrary to law, and is therefore reversed; and, there being no dispute as to the controlling facts, judgment is here rendered

in favor of plaintiff and against the defendant for the amount due on said notes.

*Judgment reversed and judgment for plaintiff in error.*

FUNK and PARDEE, JJ., concur.