**M.V.P. Ltd., L.L.C., Appellee,**

v.

**MATT et al., Appellants.**

[Cite as *M.V.P. Ltd., L.L.C. v. Matt,* 167 Ohio App.3d 396, 2006-Ohio-1634.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–05–046.

Decided March 31, 2006.

Daniel D. Mason, for appellee.

Barry W. Vermeeren, for appellant.

———

Skow, Judge.

{¶ 1} Appellants, David A. Matt and Kathleen Matt, appeal from a judgment entry by the Ottawa County Common Pleas Court granting the motion for summary judgment of appellee, M.V.P. Ltd., L.L.C. For the reasons that follow, the judgment of the trial court is reversed.

{¶ 2} Mr. and Mrs. Matt entered into a purchase agreement with developer M.V.P., wherein the Matts agreed to pay M.V.P. the sum of $100,000 for a lot in the Emerald Shores Estates Subdivision, in Ottawa County, Ohio. The deed for that transfer was filed on July 2, 1999. Under the purchase agreement, if the Matts failed to "commence construction" of a home on the property within 60 months from the date that the deed was filed, the seller had the right to repurchase that property.

{¶ 3} It is undisputed that the Matts waited until the first week of June 2004, just one month before the 60–month deadline, to get started on the plans for their home-building project. At that time, Mr. Matt contacted M.V.P. principal and architectural-control-committee member Jim Veite, and asked for the following: (1) a decision as to whether a breezeway that he was considering satisfied the subdivision's requirement that the home include an attached garage and (2) a copy of an updated site plan for his lot.

{¶ 4} M.V.P.'s next communication to Mr. Matt came not from Veite but from M.V.P.'s attorney, Russell T. McLaughlin, and was in the form of a letter, dated June 25, 2004, which stated that M.V.P. was exercising its right to repurchase his property.

{¶ 5} During the first week of July 2004, Mr. Matt, never having heard back from Veite, submitted a sketch of his proposed house for approval by the architectural-control committee. Mr. Matt later completed his drawings and, at some point around the end of July or early August 2004, submitted them for approval. On August 19, 2004, Mr. Matt took his plans to the Danbury Township zoning inspector and received his building permit.

{¶ 6} Although the plans were never officially approved or rejected by the architectural-control committee, Veite informally indicated to Mr. Matt that they "looked all right" to him. And as late as August 19, 2004, Veite approved a change in the Matts' plans—following a vote by the full three-member architectural-control committee—that would allow for a more lenient five-foot side-yard requirement, rather than the original ten-foot side-yard requirement.

{¶ 7} Despite the slow, but apparently continuing, progress in plan-approval process, the attorney for M.V.P. reiterated the developer's intention to repurchase the lot in a letter to the Matts dated September 10, 2004. This time, he enclosed two contracts for the repurchase, with instructions that the Matts sign and return them for execution by Veite.

{¶ 8} On or about October 7, 2004, the Matts sent a letter to Veite and McLaughlin, which—without referring to the attempted repurchase—indicated that they were unable to build their home as a result of M.V.P.'s failure to move two storm sewer pipe sections from the property.

{¶ 9} On October 14, 2004, M.V.P. filed against the Matts a complaint for specific performance that requested reconveyance of the property to M.V.P. The Matts filed their answer, and on December 1, 2004, filed a motion for summary judgment in which they alleged that under the real estate purchase contract and the declarations for the subdivision, the homeowners' association, and not the developer, was the real party in interest holding the conditional right to repurchase. The trial court initially granted the Matts' motion, and the complaint was dismissed. Then, upon a request for consideration and motion for relief from judgment, the court reversed itself, set aside the dismissal, and denied the motion for summary judgment.

{¶ 10} Both M.V.P. and the Matts filed motions for summary judgment based upon the facts of the case as demonstrated by exhibits, affidavits, and depositions. On August 5, 2005, the trial court granted M.V.P.'s motion and denied that filed

by the Matts. It is from this decision and judgment entry that the Matts appealed, setting forth the following assignments of error:

{¶ 11} I. "The court erred in failing to rule that any right of repurchase runs to the Emerald Shores Estate Homeowners Owners Association, Inc., not M.V.P. Ltd., L.L.C."

{¶ 12} II. "The court erred in failing to rule that appellants obtaining home plans and submitting them to plaintiff for architectural control approval prior to the fifth year anniversary combined with obtaining a building permit substantially complied with any requirement to commence construction within the five-year period."

{¶ 13} III. "When time is not of the essence in a real estate contract and the obligor is substantially and demonstrably moving toward performance, Ohio law will not support a forfeiture of the obligor's interest."

{¶ 14} IV. "The trial court erred in failing to add the appellants' $12,000 payment for the boat slip to the $100,00 lot purchase price."

{¶ 15} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 16} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

{¶ 17} Summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. *Ryberg v. Allstate Ins. Co.* (July 12, 2001), 10th Dist. No. 00AP–1243, 2001 WL 777121, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936.

{¶ 18} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once this burden has been satisfied, the nonmoving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.

{¶ 19} We begin with the Matts' first assignment of error, wherein they argue that the trial court erred in failing to rule that any right of repurchase in this case runs to the subdivision's homeowners' association alone, and not to M.V.P. M.V.P. counters that although the homeowners' association may well have its own right of repurchase, it is not exclusive and it in no way detracts from the right of repurchase belonging to the developer pursuant to section 16 of the original purchase agreement. Section 16 provides:

{¶ 20} "As part of the consideration for this Agreement, the Purchaser specifically agrees to the terms set forth in the Declarations providing that the Seller has the right to repurchase the property of the Purchaser in the event that the Purchaser fails to commence construction of a dwelling unit on the premises within sixty (60) months from the date that the Purchaser's deed is filed for record in the Ottawa County Recorder's Office. As provided in the Declarations, the purchase price shall be at the same price set forth for the purchase and sale in this Agreement, with closing costs and prorations as set forth herein, except that the Purchaser shall at that time become the Seller and the Seller shall at that time become the Purchaser."

{¶ 21} The "Declarations" referred to in the purchase agreement provides at Article VI, Building Restrictions, Section 5:

{¶ 22} "Every Owner, by acceptance of a deed to the Restricted Premises, agrees to commence construction of a dwelling on such Owner's lot within sixty (60) months after the recording of such deed in the office of the Ottawa County Recorder. Upon failure of an owner to commence construction of a dwelling within such period, the Association shall have the right, upon sixty (60) days' advance notice, to purchase such Owner's lot at the original purchase price paid by the Owner, with title fees, escrow and other closing costs borne in accord with the usual and customary practice then existing in Ottawa County, Ohio."

{¶ 23} The Matts construe the two sections as transferring any contractual right of repurchase to the homeowners' association. By contrast, M.V.P. interprets the two sections as entitling both the homeowners' association and M.V.P. to a right of repurchase. We agree with M.V.P.

{¶ 24} In the Declarations, under Article VI of the building restrictions, section 5, the homeowners' association is clearly given a conditional right to repurchase. But, as evidenced by section 16 of the purchase agreement, that right is not exclusive: "Seller" M.V.P. has its own conditional right to repurchase. Accordingly, the Matts' first assignment of error is not well taken.

{¶ 25} The Matts' second and third assignments of error both deal with whether the Matts timely and sufficiently complied with the requirement that they commence construction of their home within 60 months of the filing of their

deed. For purposes of clarity and convenience, the two assignments of error will be considered together.

{¶ 26} The right to repurchase in this case is a condition subsequent. See *Bruner–Goodhue–Cooke–Cranz Agency Co. v. Smith* (1927), 25 Ohio App. 21, at 29, 157 N.E. 407 (holding that a condition subsequent presupposes an existing obligation that is to be defeated or forfeited if the condition is not fulfilled); see, also, *Trailsend Land Co. v. Virginia Holding Corp.* (1984), 228 Va. 319, 321 S.E.2d 667, citing G. Thompson, Commentaries on the Modern Law of Real Property (1979) 593, Section 1875 (stating that an option to repurchase is a condition subsequent). "In the case of a condition subsequent, the conveyor retains a right to re-enter and forfeit the estate whenever the condition is violated * * *." *Murray v. Trustees of Lane Seminary* (1956), 80 Ohio Law Abs. 353, 1 O.O.2d 236, 140 N.E.2d 577. The condition subsequent is not favored either in law or in equity and is strictly construed to save the grant and not to defeat it. Id., citing *Cincinnati v. Babb* (1893) 4 Ohio Dec. 464.

{¶ 27} As part of this strict construction, substantial performance by the obligor is all that is required. See *Bruner–Goodhue–Cooke–Cranz Agency Co. v. Smith,* supra. In addition, any performance that the obligee accepts as performance would not be a failure of performance within the meaning of the forfeiture clause of the purchase agreement. Id., 25 Ohio App. at 30, 157 N.E. 407.

{¶ 28} Here, the specific question we must decide is whether the Matts' planning and preparation activities amounted to the timely commencement of construction in this case. Neither the declarations nor the purchase agreement contains any definition of what it means to "commence construction." However, Veite himself repeatedly testified that the activities of getting plans, getting plans approved, and getting a building permit are all part of the construction process.

{¶ 29} Strictly construing the right to repurchase in this case against M.V.P., we conclude that the Matts, in beginning the planning process in June 2004, and in continuing that process throughout the same summer, substantially performed their obligation to commence construction of their home within the allotted time. We additionally conclude that M.V.P. periodically accepted the Matts' performance, even after the July 2, 2004 deadline, both when Veite told Mr. Matt that the plans looked all right to him and when he approved a change in the plans that provided for the less stringent side-yard requirement. Accordingly, the Matts' second and third assignments of error are found well taken.

{¶ 30} The final assignment of error asserts that the trial court erred in failing to consider the Matts' $12,000 payment for a boat slip in its computation of the $100,000 lot purchase price. This assignment of error is moot, primarily because

the repurchase provision was never triggered in this case, but also because M.V.P. stipulated in its brief to amended judgment in the amount of $112,000.

{¶ 31} Because we find the Matts' second and third assignments of error well taken, the judgment of the Ottawa County Court of Common Pleas is reversed. M.V.P. is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal are awarded to Ottawa County.

Judgment reversed.

HANDWORK and PARISH, JJ., concur.